# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3822

_____

| | | |
|---|---|---|
| Sandra R. Throneberry, | * | |
| | * | |
| Plaintiff/Appellant, | * | |
| | * | |
| Walter M. Dickinson, | * | |
| | * | Appeal from the United States |
| Plaintiff, | * | District Court for the |
| | * | Eastern District of Arkansas. |
| v. | * | |
| | * | |
| McGehee Desha County Hospital, | * | |
| | * | |
| Defendant/Appellee. | * | |

_____

Submitted: November 16, 2004
Filed: April 11, 2005

_____

Before RILEY, JOHN R. GIBSON, and GRUENDER, Circuit Judges.

_____

RILEY, Circuit Judge.

Does the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601-2654, mandate strict liability for employers in all cases in which an employer interferes with an employee's FMLA rights? We conclude it does not.

Sandra Throneberry (Throneberry) sued her employer, McGehee Desha County Hospital (Hospital), alleging three violations of the FMLA. After a jury trial, the

district court[1] entered judgment in the Hospital's favor, and later denied Throneberry's Motion for a New Trial, Judgment as a Matter of Law, and to Alter or Amend. We affirm.

## I.  BACKGROUND

Throneberry, a registered nurse, accepted a position as a staff home health nurse with the Hospital in 1988. During her employment with the Hospital, Throneberry enjoyed above-average performance reviews and increased responsibility. In 1998, after her father's death and her divorce, Throneberry's mental health gradually deteriorated to a point where it impacted her working relationships and job performance. Throneberry began missing work, leaving work to visit a casino, failing to read important mail, and not completing her work. According to Throneberry, she began to suffer a nervous breakdown, and also began taking the prescription drugs Xanax, Prozac and Luvox to treat her emotional issues.

In August 1998, Throneberry's mental and emotional problems came to a head at work. At trial, Throneberry testified about her emotional state in August 1998: "I know that I had difficulty concentrating. . . . I could not complete tasks. . . . I was depressed. I was having mood swings. I could cry about–I would cry about almost anything. I was upset." One of Throneberry's co-workers, who is also a registered nurse, testified at trial that Throneberry "was agitated one minute, crying the next, unable to focus at work. When she did come to work, it was disruptive to the rest of us because we weren't able to–because you never knew if she was going to be happy, sad or crying." After Throneberry endured three tumultuous days in and out of work in early August 1998, Barbara Wood (Wood), the acting Hospital administrator, met with Throneberry and recommended "she please take a month's leave of absence to

---

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

get herself together and we would re-evaluate at the end of the month." Throneberry agreed to take a month of paid medical leave to address her serious health condition.

Although Throneberry was on medical leave, her co-workers informed Wood that Throneberry still showed up at work "acting just like she was before: over-medicated, ansy, [and] disrupting the work–their workplace." Throneberry's co-workers called Wood to ask her to come to the work area, as "they could not deal with it anymore." When Wood arrived to see what was happening, "Throneberry was reared back in a seat and she had on a short, tight dress that was very inappropriate for the workplace, and she was laughing, giggly. . . . She had her chair reared back and her [legs were] propped up on the chair and her knees were apart." Wood never had seen any employee at the Hospital act or dress like Throneberry did that day. Wood called Throneberry's mother and aunt so they could pick her up at work.

After this incident, Wood was told by another management member that "you need to let [Throneberry] go." After thinking about the situation for "a long time," Wood decided she would not discharge Throneberry, which would require informing the state board of nursing, but instead would ask her to resign. Wood then met with Throneberry and asked her to resign. When asked why, Wood told Throneberry her work performance had declined in the last year, and her personal problems had impacted the entire department. Throneberry refused to resign, left the meeting, and went home, where she overdosed on Xanax. After being released from the hospital the next day, Throneberry called Wood and asked to resign with pay, as long as the Hospital provided her with certain severance benefits, which the Hospital paid. According to a resignation agreement Throneberry signed, she continued on a leave of absence, with pay and benefits, until December 31, 1998, at which time her resignation became effective. Throneberry testified she "would have continued [her] medical leave" if she had known she had been entitled to twelve weeks of FMLA leave.

After Throneberry resigned, her former co-workers assumed her responsibilities and reviewed her unopened mail. Throneberry's unopened mail included letters from the state health department relating to Medicaid updates. Some of these letters were over five months old. The co-workers also discovered Throneberry had billed Medicaid for services without proper documentation, which required the Hospital to repay Medicaid approximately $40,000. Based on the performance issues discovered after Throneberry resigned, Wood testified she would have discharged Throneberry before her resignation date took effect.

Throneberry brought this federal action against the Hospital, alleging the Hospital violated the FMLA by interfering with her FMLA rights, failing to reinstate her, and retaliating against her for taking FMLA leave. At the close of opening statements at her jury trial, Throneberry voluntarily dismissed her retaliation claim. The district court submitted Throneberry's interference and reinstatement claims to the jury. The jury found in favor of Throneberry on her interference claim, and found in the Hospital's favor on the reinstatement claim.[2] Because the jury found in Throneberry's favor on at least one claim, the verdict form then asked the jury two questions: "Question No. 1: Has it been proved by the preponderance of the evidence that defendant would have discharged plaintiff regardless of her exercise of her rights under the FMLA?" and "Question No. 2: Has it been proved by the preponderance of the evidence that plaintiff would not have been employed by the defendant at the

---

[2]The jury found Throneberry successfully proved the following elements on her interference claim: "First, that the plaintiff had depression, panic attacks and anxiety; second, that depression, panic attacks and anxiety were serious health conditions; And, third, that the plaintiff was absent from work because of that serious health condition; Fourth, that the plaintiff gave defendant appropriate notice of her need to be absent from work; And, fifth, that the defendant interfered with the plaintiff's rights under the Family Medical Leave Act." The Hospital admitted Throneberry satisfied the first three elements, so Throneberry was required to prove only the last two elements.

time job reinstatement would have been requested?"[3] The jury answered yes to both questions.[4] Based on the jury's verdict, the district court entered judgment in the Hospital's favor.

After the district court entered judgment, Throneberry filed a Motion for a New Trial, Judgment as a Matter of Law, and to Alter or Amend, arguing the district court erroneously submitted a same decision instruction and an after-acquired evidence instruction to the jury. Throneberry also urged the district court to allow a new trial on damages. Finally, Throneberry asserted that, because the jury found the Hospital had interfered with Throneberry's substantive FMLA rights, the court was required to amend its judgment to award nominal damages to Throneberry.

In ruling on Throneberry's post-trial motion, the district court recognized "intent is immaterial in an interference claim." Quoting Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 960-61 (10th Cir. 2002) (citing 29 C.F.R. § 825.216(a)), the district court also recognized Throneberry, simply by exercising her FMLA rights, had "no greater rights than an employee who remains at work." Relying on Smith, the district court concluded "an employee exercising her rights under the FMLA may be dismissed, but only if the dismissal would have occurred

---

[3]Throneberry had earlier moved the court not to submit a same decision instruction or an after-acquired evidence instruction to the jury on the interference claim, but the district court denied the motion.

[4]The verdict form also instructed the jury to answer the following question, if the jury answered either of the first two questions in the negative: "Question No. 3: Has it been proved by a preponderance of the evidence that, even if plaintiff had not been discharged on December 31, 1998, defendant would have terminated plaintiff's employment by December 31, 1998 because she failed to perform her job duties and engaged in non-work related activities during regular working hours?" Because the jury answered the first two questions in the affirmative, the jury did not consider this question.

regardless of the employee's request for or taking of FMLA leave." Based on this understanding of the FMLA, the court found "it properly instructed the jury on the same decision issue." Similarly, the court rejected Throneberry's attack on the after-acquired evidence instruction for two reasons. First, the court reiterated Throneberry enjoyed no greater rights under the FMLA than an employee who remained at work, so the court decided "the jury could consider evidence establishing that [Throneberry] would not have been employed by the [Hospital] at the time job reinstatement would have been requested." Second, the court noted "the jury did not reach the after-acquired evidence instruction." Finally, the district court denied Throneberry's requests for a new trial and nominal damages.

On appeal, Throneberry contends (1) "the district court erred in giving a same decision/after-acquired evidence instruction to the jury"; and (2) "the district court erred in denying [her] motion for a new trial, judgment as a matter of law, and to alter or amend."

## II. DISCUSSION
### A. Interference Claim under the FMLA

Throneberry concedes the district court properly gave the same decision instruction as it related to the reinstatement claim. However, Throneberry argues the district court erroneously gave the same decision instruction, and the after-acquired evidence instruction for that matter, relating to the interference claim. We review the district court's jury instructions for an abuse of discretion. Campos v. City of Blue Springs, 289 F.3d 546, 551 (8th Cir. 2002). When "reviewing alleged errors in jury instructions," we ask "whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury." Jones v. Swanson, 341 F.3d 723, 734 (8th Cir. 2003). As "long as the jury is correctly instructed on the substantive issues in the case," we commit to the sound discretion of the district court the actual "form and language of jury

-6-

instructions." Id. We "will reverse on the basis of instructional error only if [we conclude] the error affected the substantial rights of the parties." Id.

Throneberry contends the FMLA mandates strict liability for an employer whenever it interferes with an employee's FMLA rights. As a matter of first impression for our circuit, we must decide whether the FMLA imposes strict liability for all interferences with FMLA rights, or whether the FMLA condones lawful interference with FMLA rights. Rejecting Throneberry's interpretation of the FMLA, we hold an employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights.

The FMLA entitles eligible employees to take a total of twelve weeks of leave during a twelve-month period due to "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). When an employee completes her FMLA leave, she is generally entitled to be restored to the position she occupied before she took leave. See 29 U.S.C. § 2614(a)(1). However, an employee's restoration rights are limited, such that no employee taking FMLA leave is entitled to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B).

Because the FMLA grants valuable leave and restoration rights to eligible employees, it also secures these rights against unlawful infringement. The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. 29 U.S.C. § 2615(a)(1). A violation of this provision creates what is commonly known as the interference theory of recovery. 29 U.S.C. § 2617; see, e.g., Smith, 298 F.3d at 960. The FMLA also makes it "unlawful for any employer to discharge or in any other

manner discriminate against any individual for opposing any practice made unlawful by" the FMLA. 29 U.S.C. § 2615(a)(2). A violation of this provision creates what is commonly known as the discrimination theory of recovery. 29 U.S.C. § 2617; see, e.g., Smith, 298 F.3d at 960.

Throneberry essentially asserts her interference theory of recovery means the Hospital absolutely had no authority to interfere with her FMLA leave. Although the FMLA focuses on guaranteed leave, as Throneberry correctly points out, the second valuable FMLA guarantee is a right to restoration after FMLA leave ends. Throneberry's apparent assertion that the two guarantees are not connected is where her theory collapses. The FMLA simply does not force an employer to retain an employee on FMLA leave when the employer would not have retained the employee had the employee not been on FMLA leave. This conclusion is supported by the FMLA's plain language and structure, the Department of Labor's implementing regulations, a persuasive Tenth Circuit decision, and uncluttered logic.

The FMLA is structured to grant leave rights to qualified employees, but the FMLA also grants the all-important right to restoration upon completion of the leave. 29 U.S.C. § 2614(a)(1)(A). However, an employee who takes FMLA leave does not have unlimited restoration rights upon returning from leave. As mentioned above, the FMLA specifically states an employee taking FMLA leave is not entitled to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B); see also 29 C.F.R. § 825.216(a) ("An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period. An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment."). Thus, the FMLA envisions employees taking leave and returning to work as valuable rights working in concert with each other, i.e., the FMLA does not

-8-

require an employer to retain an employee on FMLA leave if that employee has no right to return to work. The reason is the FMLA does not provide leave for leave's sake, but instead provides leave with an expectation an employee will return to work after the leave ends. Therefore, the FMLA's plain language and structure dictates that, if an employer were authorized to discharge an employee if the employee were not on FMLA leave, the FMLA does not shield an employee on FMLA leave from the same, lawful discharge.

This interpretation also tracks the Department of Labor's interpretation of the FMLA. The Department of Labor, acting under its congressional authority to implement the FMLA, see 29 U.S.C. § 2654, permits employers to lawfully interfere with employees' rights to take FMLA leave. For example, the FMLA regulations state, "If an employee is laid off during the course of taking FMLA leave and employment is terminated, the employer's responsibility to continue FMLA leave, maintain group health plan benefits and restore the employee cease at the time the employee is laid off, provided the employer has no continuing obligations under a collective bargaining agreement or otherwise." 29 C.F.R. § 825.216(a)(1); see also 29 C.F.R. § 825.214(b) ("If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA."); 29 C.F.R. § 825.216(b) ("If an employee was hired for a specific term or only to perform work on a discrete project, the employer has no obligation to restore the employee if the employment term or project is over and the employer would not otherwise have continued to employ the employee."). But see 29 C.F.R. § 825.702 (discussing interaction between the FMLA and the Americans with Disabilities Act (ADA)).[5] However, the regulations make clear that, if an

---

[5]We note this appeal does not present issues involving the ADA. Thus, we do not comment on whether the Hospital might have violated the ADA in this case. See, e.g., 29 C.F.R. § 825.214(b) (recognizing that, in certain circumstances, an employer's conduct will not violate the FMLA, but "the employer's obligations may

employer chooses to interfere with an employee's FMLA leave rights, the "employer would have the burden of proving that an employee would have been laid off during the FMLA leave period and, therefore, would not be entitled to restoration." 29 C.F.R. § 825.216(a)(1). As long as an employer can show a lawful reason, i.e., a reason unrelated to an employee's exercise of FMLA rights, for not restoring an employee on FMLA leave to her position, the employer will be justified to interfere with an employee's FMLA leave rights.

In addition to finding support to reject a strict liability standard in the FMLA's plain language and in the Department of Labor's regulations, we, like the district court, find support in the Tenth Circuit's decision in Smith. The employer in Smith discharged an employee on FMLA leave. After the employee prevailed on her interference claim before a jury and the district court entered judgment in the employee's favor, the employer appealed, contending the district court erroneously instructed the jury that the employer bore the burden to prove it would have discharged the employee regardless of the employee exercising her FMLA rights.

The Tenth Circuit initially noted an employee can prove interference with an FMLA right regardless of the employer's intent. Smith, 298 F.3d at 960. However, the court recognized "an employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request." Id. (citation omitted). Given that understanding, the Tenth Circuit held "an employee may be dismissed, preventing her from exercising her statutory right to FMLA leave–but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." Id. at 961 (citing Gunnell v. Utah Valley State

be governed by the" ADA) (citing 29 C.F.R. § 825.702); Tory L. Lucas, Disabling Complexity: The Americans with Disabilities Act of 1990 and Its Interaction with Other Federal Laws, 38 Creighton L. Rev. 871, 876-91 (2005) (discussing the interaction between the ADA and the FMLA).

Coll., 152 F.3d 1253, 1262 (10th Cir. 1998) (citing 29 C.F.R. § 825.216(a)); see generally O'Connor v. PCA Family Health Plan, Inc., 200 F.3d 1349, 1352-55 (11th Cir. 2000) (implicitly holding an employer who discharged an employee on FMLA leave was not liable under an interference theory under the FMLA because the employer showed it would have discharged the employee had she not been on FMLA leave). Thus, the Tenth Circuit allows an employee to "prevail under an [interference] theory if she was denied her substantive rights under the FMLA for a reason connected with her FMLA leave." Smith, 298 F.3d at 961. However, the Tenth Circuit further made clear "a reason for dismissal insufficiently related to FMLA leave will not support recovery under an interference theory." Id.

After settling the issue of whether an employer is strictly liable for interfering with an employee's FMLA leave, the Tenth Circuit then addressed "which party [in an interference case] bears the burden of proving whether the employee would or would not have been dismissed for reasons unrelated to her FMLA leave." Id. at 962. Rejecting the employer's attempt to place that burden on the employee, the Tenth Circuit held the Department of Labor's implementing regulation, 29 C.F.R. § 825.216(a), "validly shifts to the employer the burden of proving that an employee, laid off during FMLA leave, would have been dismissed regardless of the employee's request for, or taking of, FMLA leave." Smith, 298 F.3d at 963.

We find the Tenth Circuit's reasoning in Smith relating to interference claims convincing. We also note Throneberry recognizes the Tenth Circuit's decision in Smith is the only decision from a circuit court clearly addressing whether the FMLA mandates strict liability for any interference with an employee's FMLA rights. By adopting the Tenth Circuit's holding in Smith, our decision today avoids a circuit split.

Logic also dictates we interpret the FMLA to preclude the imposition of strict liability whenever an employer interferes with an employee's right to take FMLA

leave. We initially note every discharge of an employee while she is taking FMLA leave interferes with an employee's FMLA rights. However, the mere fact of discharge during FMLA leave by no means demands an employer be held strictly liable for violating the FMLA's prohibition of interfering with an employee's FMLA rights. Examples should illuminate this conclusion. If an employee on FMLA leave harasses a supervisor or a co-worker, Throneberry would contend the employer must retain that harassing employee until the FMLA leave ends. That would be a senseless proposition. The FMLA makes clear the harassing employee enjoys no greater rights while on FMLA leave than had the employee not taken FMLA leave. Thus, if the employer would have discharged the employee for harassing a supervisor or co-worker if the employee were not on FMLA leave, then the employer would be justified in discharging the employee for harassment while the employee was on FMLA leave. To be clear, the employer in such a circumstance would not have to provide the harassing employee with FMLA leave rights and then wait until the FMLA leave ends before deciding to discharge the employee for harassment.[6]

Another example of an employer's lawful ability to interfere with an employee's FMLA leave rights might be when an employer goes out of business while an employee is on FMLA leave. Discharging the employee on FMLA leave clearly interferes with the employee's rights under the FMLA. However, holding the employer strictly liable for a violation of the FMLA in such a circumstance would be preposterous.

A final example of why we cannot adopt Throneberry's strict liability theory involves taking Throneberry's own conduct in this case to the extreme. The evidence

---

[6]Our conclusion is faithful to the FMLA's purpose to accomplish its goals "in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(3). Holding an employer strictly liable for violating the FMLA by discharging a harassing employee on FMLA leave would not balance the legitimate interests of the employer with the FMLA's leave-granting mandate.

showed Throneberry disturbed the workplace before she decided to take leave. During her FMLA leave, Throneberry returned to her workplace and caused additional workplace disturbance. Under the theory Throneberry advocates on appeal, she had the unrestricted right to visit and disturb her workplace every day during her FMLA leave without fear that the Hospital could "interfere" with her FMLA rights. Indeed, the thrust of Throneberry's interpretation of the FMLA would mandate that the Hospital be strictly liable if it discharged her for constantly disrupting the workplace during her FMLA leave. Interpreting the FMLA differently, we faithfully apply the FMLA's caution that an employee on FMLA leave has no greater rights than the employee would have enjoyed had she not taken FMLA leave. Strict liability contravenes this statutory caution.

Thus, we conclude the district court appropriately instructed the jury on the interference claim and correctly placed the burden on the Hospital to prove it would have discharged Throneberry regardless of her taking FMLA leave.

Having concluded the district court did not err in instructing the jury, we still must determine whether the evidence supports the district court giving the challenged instructions, and, ultimately, whether the evidence supports the jury's verdict that the Hospital would have discharged Throneberry even if she had not taken FMLA leave. Resolving these issues is not easy, as the reasons for, and the timing of, Throneberry's discharge were murky at trial. Notwithstanding the murkiness of the evidence, we conclude the district court rightly allowed the jury to decide whether the Hospital had a lawful reason for interfering with Throneberry's FMLA leave, i.e., whether the Hospital discharged Throneberry based on her exercise of her FMLA rights.

The evidence in the record supports the jury's finding that the Hospital would have discharged Throneberry had she not exercised her FMLA rights. Indeed, the evidence suggests the Hospital discharged Throneberry because of her work performance problems together with her disruptive conduct after she went on FMLA

-13-

leave. Wood testified no other employee had ever dressed or acted like Throneberry did in early August 1998. Given the previous complaints about Throneberry's job performance, Throneberry's negative impact on the work environment, and Throneberry's conduct during her FMLA leave, a jury reasonably could conclude the Hospital had the right to discharge Throneberry, because the Hospital would have discharged Throneberry regardless of whether she exercised her FMLA rights.

Finally, we note Throneberry has the mistaken belief she prevailed on her interference claim before the jury. What actually happened at trial is Throneberry proved the Hospital interfered with her FMLA leave rights, but then the Hospital proved it lawfully interfered with those rights. Thus, it cannot fairly be said that Throneberry prevailed on her interference claim in front of the jury.[7]

## B.    Post-Trial Motion

Throneberry's argument on appeal that the district court erroneously denied her post-trial motion depends upon her succeeding in the first issue discussed above: "As a result of [the same decision and after-acquired instructions] going to the jury, Throneberry argued [to the district court] that she was entitled to a new trial on damages, judgment as a matter of law on the issue that the same decision/after-acquired evidence defenses are not recognized as a defense for substantive FMLA

---

[7]We urge district courts in these types of cases not to leave open dates when issuing a same decision instruction to juries. Not surprisingly, the defining moment to determine whether an employer unlawfully interfered with an employee's FMLA rights is when the employer actually interferes with the employee's FMLA rights (in this case, that moment was when the Hospital forced Throneberry to resign). In interference cases under the FMLA, we believe district courts must ensure the jury understands two points: first, an employer is not strictly liable any time it interferes with an employee's FMLA leave, i.e., the employer is only liable for unlawful interference with an employee's FMLA rights; and second, the crucial point for determining whether the employer would have made the same decision is the date on which the employer actually interfered with an employee's FMLA rights.

claims, and for an order amending the judgment to reflect nominal damages." Because we (1) reject Throneberry's proposed interpretation of the FMLA, (2) hold the district court properly instructed the jury, and (3) conclude sufficient evidence supports the jury's verdict in the Hospital's favor, we likewise reject Throneberry's argument that the district court erroneously denied her post-trial motion.

## III.   CONCLUSION

For the foregoing reasons, we affirm the district court's entry of judgment in favor of the Hospital.

_____