# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2744

_____

George Ballato,

    Plaintiff-Appellant,

v.

Comcast Corp.,

    Defendant-Appellee.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
District of Minnesota.

_____

Submitted: March 15, 2012
Filed: April 27, 2012

_____

Before MURPHY, BRIGHT, and GRUENDER, Circuit Judges.

_____

BRIGHT, Circuit Judge.

George Ballato lost his employment with Comcast Corporation when he failed to show up for work on three consecutive shifts and failed to notify his department of his absences or to request leave under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601–54. Ballato filed a lawsuit against Comcast claiming the company interfered with his ability to request an excused absence under the FMLA, and that his termination from employment was based on the interference, as well as retaliation for his prior FMLA absences.

The district court[1] rejected Ballato's claims and dismissed his action on summary judgment. Ballato appeals and we affirm.

## I. Background

Comcast is a media and communications company that provides cable, internet, and phone services. Comcast hired Ballato as a customer account executive in 2007. In the months before his termination, Ballato handled customer service calls to Comcast from Spanish-speaking customers. In April 2009, Ballato applied for FMLA leave. His FMLA Certification of Health Care Provider indicated he suffered from chronic fatigue, depression, and weakness, and would require intermittent absences estimated at five days per month. Ballato received final approval of his request for intermittent leave on May 18, 2009.

Under Comcast's personnel policy, an employee on intermittent FMLA leave must contact Comcast's Resource Management Center (Resource Center) when the employee needs to use the FMLA leave. Ballato called the Resource Center and took his first day of FMLA leave on May 8, 2009, and he continued to take FMLA leave for the next eleven days. During this time Ballato's mother passed away, and he received a week of paid bereavement leave starting on May 20. The last shift Ballato worked for Comcast was on May 19, 2009.

At his annual review, in February 2009, Ballato had been informed he was not meeting Comcast's performance goals and his scores were too low. Ballato did not agree with the assessment and believed it was unfair. On June 1, 2009, Ballato sent several emails to Totrinh Phan, his human resources representative, and Andrew Piontek, his supervisor, expressing dissatisfaction with his job and the pressure he felt

---

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

he was under. The following day, Ballato met with Phan and discussed his performance, dissatisfaction, and whether he would be able to collect unemployment benefits if he quit. Phan told him that if he quit he might not be able to receive unemployment benefits.

On June 3, Ballato began sending a series of emails to other employees–including an email to a vice president requesting that he "stop sending me Comcast propaganda," and an email to the person responsible for his performance review accusing her of dismantling the Spanish department. Ballato also attempted to send a mass email to all of the call-center employees, but Comcast's email system restricts access to mass email lists and prevented his message from being sent. The system sent Ballato an email notifying him of the failed attempt. Ballato forwarded the system email to Piontek and asked him to send Ballato's email to the call center. However, Ballato's original email was not attached to the system email, so Piontek was unable to determine what Ballato had attempted to send to the call-center employees.

On June 4, Ballato emailed Piontek and asked, "what's my status as a Comcast employee?" Piontek replied that evening, "You are still employed by Comcast and we look forward to your return." Ballato responded, "That's great! I can't wait to get back on the phones to truly educate our customers!"

Phan received several of Ballato's emails, either directly from him or forwarded to her from others, and she found them to be "very disturbing, concerning emails." On the morning of Friday, June 5, Phan forwarded some of the emails to her supervisor, Human Resources Manager James Randle, and stated she would arrange to deactivate Ballato's access to Comcast's computer systems and email. She also suggested that "we contact him before his shift started [sic] to put him on admin pay."

After receiving the forwarded emails from Phan, Randle sent an email to a director and a vice president of human resources. In the email, Randle expressed his concern for the "health and safety of this employee . . . and others . . . ." (ellipses in the original). Randle wrote Ballato did not seem stable and suggested that they notify security about the situation. Comcast subsequently deactivated Ballato's access to Comcast's computer systems and the building. Randle also called Ballato twice on the afternoon of June 5 and left Ballato a voicemail asking for a return call. Ballato received the voicemail that day, but did not call Randle back because he was afraid Randle had called to terminate him.

Ballato was scheduled to work from 4:30 p.m. to 1:00 a.m. on June 5, 2009. Around 3:30 p.m., Ballato called the Resource Center to request FMLA leave for his shift that evening. However, the person at the Resource Center could not find him in the attendance system and told Ballato that he should talk to his supervisor. Ballato did not attempt to contact his supervisor after he called the Resource Center.

That afternoon, Ballato also went to the Comcast building where he worked. While other Comcast employees had no trouble entering, Ballato's badge did not work. Unable to access the building, he decided to return home. Ballato did not ask anyone to assist him with entering the building, nor did he call anyone at Comcast about the issue with his badge.

On Saturday, June 6, 2009, Ballato called Randle's office line. He left a message stating he had spoken with an attorney and was advised to not have contact with anyone from Comcast. Ballato also requested "that you cease and desist all communication with me."

Ballato believed he had been fired by Comcast. Ballato was scheduled to work June 8 and 9, but did not call in to request FMLA leave, contact anyone at Comcast, or show up for either shift. On June 9, Ballato sent a letter to Phan requesting a

reason for his termination. Phan received the letter that day and notified Randle. The following day, Phan checked the attendance database and saw Ballato did not call in or show up for his shift three days in a row—June 5, 8, and 9. Under Comcast's attendance guidelines, three consecutive unexcused absences without notifying the department is considered "job abandonment" and Comcast will consider the employee to have voluntarily resigned.

Phan received instructions to send Ballato a letter notifying him of the three absences and that Comcast considered him to have voluntarily resigned. Phan sent the letter June 11. The letter also informed Ballato his resignation was effective June 10, 2009 and provided a phone number to call if he had any questions. Ballato received the letter around June 15, but did not attempt to contact anyone from Comcast to contest his termination or clarify what happened. Having not heard from Ballato, Comcast officially terminated his employment on June 24, 2009.

On August 26, 2009, Ballato filed suit against Comcast alleging interference and retaliation with his FMLA leave. In November 2010, Comcast moved for summary judgment on both claims. The district court granted the motion and issued a judgment on July 13, 2011. Ballato now appeals the district court's judgment regarding his claim based on interference with his right to obtain FMLA leave.

## II. Discussion

"We review the district court's grant of summary judgment de novo." *Bacon v. Hennepin Cnty. Med. Ctr.*, 550 F.3d 711, 714 (8th Cir. 2008). "Viewing the evidence and drawing all inferences in favor of the non-moving party, summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* We may affirm the district court's judgment based on any evidence that appears in the record. *Allen v. United States*, 590 F.3d 541, 544 (8th Cir. 2009).

-5-

The FMLA provides employees with twelve work-weeks of leave during any twelve-month period if they have a serious health condition that makes them unable to perform the functions of their position. 29 U.S.C. § 2612(a)(1)(D). The leave may be taken intermittently if there is an agreement with the employer. *Id.* § 2612(b)(1).

The FMLA recognizes two types of claims by employees: interference and retaliation. *Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008). Ballato only appeals the grant of summary judgment against his interference claim. Under the statute it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). "An employee can prevail under an interference theory if he was denied substantive rights under the FMLA for a reason connected with his FMLA leave." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006). An employer "cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under 'no fault' attendance policies." 29 C.F.R. § 825.220(c). Interference also includes "manipulation by a covered employer to avoid responsibilities under FMLA." 29 C.F.R. § 825.220(b).

The initial burden of proof in an FMLA interference case is on the employee to "'show only that he or she was entitled to the benefit denied.'" *Stallings*, 447 F.3d at 1050 (quoting *Russell v. N. Broward Hosp.*, 346 F.3d 1335, 1340 (11th Cir.2003)). For an interference claim, the employer's intent is immaterial. *Id.*

However, the FMLA does not impose strict liability on employers for interference claims. *Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005). If there exists a showing of interference, the burden shifts to the employer to prove there was a reason unrelated to the employee's exercise of FMLA rights for terminating the employee. *Id.* at 978–79; 29 C.F.R. § 825.216(a)(1). "An employee who requests FMLA leave has no greater protection against termination for

reasons unrelated to the FMLA than she did before taking the leave." *Estrada v. Cypress Semiconductor (Minn.) Inc.*, 616 F.3d 866, 871 (8th Cir. 2010). If the employer can prove that it would have terminated the employee had the employee not exercised FMLA rights, the employer will not be liable. *Throneberry*, 403 F.3d at 977. The employer is also not bound strictly to the reason provided to the employee for the termination. *See Estrada*, 616 F.3d at 871–72 (upholding summary judgment in favor of the employer in an FMLA lawsuit where the employer provided a valid alternative rationale for the termination, though different from the rationale given to the employee at the time of termination).

Ballato argues Comcast unlawfully interfered with his FMLA rights when the Resource Center failed to record his request for FMLA leave on June 5, and he was subsequently terminated, in part, for not calling in or showing up for his shift that day. Comcast argues they did not interfere with his FMLA rights because the Resource Center asked Ballato to contact his supervisor and, in the alternative, his termination was unrelated to the exercise of his FMLA rights.

As we have observed, Ballato stopped showing up for work or calling in to request FMLA leave because he incorrectly believed Comcast had terminated his employment. As the record discloses, this belief rested on the fact Ballato was locked out of Comcast's computer systems, he could not enter the building with his badge, and a person at the Resource Center told Ballato his name could not be located in the attendance record. Ballato's argument that Comcast's conduct interfered with his planned request for FMLA leave on June 5, 2009, has some initial appeal. However, even assuming Comcast's conduct was interference, Ballato was not fired on June 5 and he still had the responsibility to clarify the situation, request FMLA leave, or show up for his subsequent shifts.

While Ballato believed he had been fired from his employment, he had many opportunities to correct this erroneous assumption. On the evening of June 4, Piontek

assured Ballato that he still had a job at Comcast and they looked forward to his return. Randle called Ballato twice on June 5 and left a message asking Ballato to call him back. Ballato received the message, but declined to return the phone call. When Ballato discovered he did not have access to the building, he did not inquire with anyone why his badge did not work, despite seeing several Comcast employees entering and leaving the building. He never attempted to call anyone to clarify the situation. Over the weekend, Ballato called Comcast only to leave a message that he had spoken to a lawyer and to request Comcast cease and desist all communication with him. Yet Ballato failed to identify his lawyer, or provide his lawyer's address or phone number, closing down that potential route of communication.

Ballato received no communication from Comcast that he had been terminated before his next scheduled shift on June 8. As of June 8, Comcast still considered him an active employee. Ballato, however, still failed to call in or to attempt to show up for his June 8 shift, or any subsequent shift. Ballato did not receive the letter from Comcast indicating he had been terminated until around June 15. Yet even after receiving the letter, Ballato did not contact Comcast to contest the decision or otherwise inquire why he had been unable to request his FMLA leave.

Consistent with its attendance policy, Comcast considered Ballato to have voluntarily resigned from his position after he did not call in or show up for three consecutive shifts. Even assuming Comcast interfered with Ballato's FMLA rights on June 5, Ballato still had the responsibility to attempt to request his intermittent FMLA leave, show up for his shift, or contact Comcast in some fashion to resolve any confusion as to his status before the shift started. Comcast could still consider Ballato to have voluntarily resigned for any other series of three consecutive shifts, not including June 5, where Ballato did not call in or show up for work. By not showing up or contacting Comcast for his shifts on June 8, 9, and 10, Ballato's failure to act served as a resignation of his employment under Comcast's attendance policy. Finally, Phan noted the attendance system of the Resource Center is completely

separate from the human resources system and no evidence exists in the record that the decision makers involved with Ballato's termination had knowledge of Ballato's wish to take FMLA leave on June 5.

### III. Conclusion

Viewing the facts in the light most favorable to Ballato, the series of events that led to his termination do not portray a smooth firing process. However, they also do not show interference with Ballato's FMLA rights. Ballato's unilateral determination that he was fired did not excuse him from his responsibility to return Comcast's phone calls or otherwise confirm his employment status *before* he stopped showing up to work or calling in to request additional FMLA leave. Ballato had many opportunities to correct his misperception that he had been terminated before missing three consecutive work shifts. The record in this case does not support Ballato's claim of interference against Comcast, and therefore, we affirm the decision of the district court.

_____