# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-1405

_____

Allen Bradley

*Plaintiff - Appellant*

v.

Little Rock Wastewater Utility; Dale Gilbert, in his individual and official
capacity as a Supervisor of Little Rock Wastewater Utility

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: January 16, 2013
Filed: February 14, 2013
[Unpublished]

_____

Before RILEY, Chief Judge, WOLLMAN and GRUENDER, Circuit Judges.

_____

PER CURIAM.

Allen Bradley claims that the Little Rock Wastewater Utility ("LRW"), his
former employer, and Dale Gilbert, his former supervisor, interfered with his rights
under the Family and Medical Leave Act ("FMLA"). He also claims that LRW
terminated his employment in violation of the Americans with Disabilities Act

("ADA"). The district court[1] entered summary judgment in favor of Gilbert and LRW, and Bradley appeals.

Bradley was employed by LRW, the municipally owned sewer utility for Little Rock, Arkansas, from 1994 until July 2009. As an LRW employee, Bradley had a history of poor performance, consistently ranking below his peers in annual evaluations. LRW rates its employees in ten different performance categories each year. Out of 40 possible points, Bradley earned scores of 23 and 25 in 2007 and 2008, respectively. Comparatively, the three other technicians on Bradley's team earned scores between 32 and 36.

Between April 14 and May 25, 2009, Bradley arrived late for work three times, and he also missed two full days. On May 26, he again was absent from work and did not contact LRW with an explanation, in violation of LRW's call-in policy. That day, Gilbert issued Bradley a written warning and placed him on probation for six months for failing to comply with LRW's attendance policies.

Gilbert issued Bradley a second written warning on July 17, 2009, which identified several other performance-related deficiencies. In this warning, Gilbert cited Bradley for failing to complete assigned work in a timely manner, failing to complete paperwork as instructed, failing to perform department work in an organized manner, and inability to perform the tasks required by his position. Gilbert also cited Bradley for failing to wear safety shoes in hazardous areas as required by LRW's safety policies.

On July 22, 2009, LRW terminated Bradley's employment for insubordination. Bradley had sustained an injury at home in November 2008, and he had been on light

_____

[1] The Honorable D. P. Marshall, Jr., United States District Judge for the Eastern District of Arkansas.

duty since February 2009. When Gilbert observed Bradley performing several restricted tasks, he asked Bradley to produce a doctor's note releasing him to full duty by July 21. Bradley failed to produce a note, and Gilbert arranged a meeting the next day to inform Bradley that he was being placed on administrative leave. Before the meeting ended, however, Bradley became belligerent and, despite instructions to the contrary, refused to leave the facility. Gilbert then told Bradley that he would call the police if Bradley did not leave immediately. When Gilbert did call the police, Bradley finally left. LRW terminated Bradley's employment the next day.

Bradley filed suit against LRW and Gilbert, claiming that LRW interfered with his FMLA rights and failed to accommodate his diabetes in violation of Title II of the ADA.[2] The district court granted LRW's motion for summary judgment, finding that (1) Bradley's FMLA claim failed because he never gave notice of his intent to take FMLA leave, and (2) Bradley's ADA claim failed because he was not a "qualified individual."

"We review the district court's grant of summary judgment *de novo.*" *Bacon v. Hennepin Cnty. Med. Ctr.*, 550 F.3d 711, 714 (8th Cir. 2008). "Viewing the evidence and drawing all inferences in favor of the non-moving party, summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* "This court may affirm the summary judgment decision on any basis supported by the record." *Heacker v. Safeco Ins. Co. of Am.*, 676 F.3d 724, 727 (8th Cir. 2012).

Bradley first appeals the adverse grant of summary judgment on his FMLA claim. The FMLA allows an employee to take twelve weeks of leave during any

---

[2]Bradley also brought claims under the Age Discrimination in Employment Act of 1967 and 42 U.S.C. § 1983. The district court also entered summary judgment in favor of LRW with respect to these claims, and Bradley does not appeal this decision.

twelve-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). "The FMLA recognizes two types of claims by employees: interference and retaliation." *Ballato v. Comcast Corp.*, 676 F.3d 768, 772 (8th Cir. 2012); 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by the FMLA]."). In his brief and also at oral argument, Bradley insisted that his FMLA claim on appeal is based solely on an interference theory.

To state a claim for interference, the employee must show that he gave notice of his need for FMLA leave. *Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008). After the employee establishes that he gave proper notice, he bears the initial burden of proof to show that he was entitled to a denied FMLA benefit. *Ballato* 676 F.3d at 772. If the plaintiff makes a showing of interference, the burden then shifts to the employer to establish that there was a reason for terminating the employment that was unrelated to the employee exercising his FMLA rights. *Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972, 978-79 (8th Cir. 2005). "As long as an employer can show a lawful reason, i.e., a reason unrelated to an employee's exercise of FMLA rights, for not restoring an employee on FMLA leave to her position, the employer will be justified to interfere with an employee's FMLA leave rights." *Id.* at 979.

Although he does not claim to have been seeking to exercise any FMLA rights at the time, Bradley argues that LRW interfered with his FMLA rights because it considered his diabetes-related absences when it terminated his employment. Regardless of whether Bradley meets his initial burden of proof, however, LRW offers a legitimate reason for termination that is unrelated to Bradley exercising any FMLA rights. The record reflects that on May 26, 2009, LRW placed Bradley on probation for failing to follow the proper notice procedures for an illness-related absence. On July 21, 2009, Gilbert decided to place Bradley on administrative leave for failing to observe his light duty restrictions without producing a doctor's note

-4-

releasing him from light duty. Finally, Gilbert emailed his supervisors to recommend that Bradley's employment be terminated based on Bradley's conduct at the July 22 meeting. Gilbert wrote the July 22 email immediately after Bradley became belligerent and refused to leave the premises when Gilbert told him that he was to be placed on administrative leave.

The record supports LRW's assertion that it terminated Bradley's employment for insubordination, which is a legitimate reason unrelated to Bradley's exercise of any FMLA rights. *Cf. Putman v. Unity Health Sys.*, 348 F.3d 732, 736 (8th Cir. 2003) (noting that "[o]ur cases have repeatedly held that insubordination and violation of company policy are legitimate reasons for termination" in the employment discrimination context). Bradley presents no evidence to create a material question of fact on this issue. There is nothing in the record to suggest that LRW considered Bradley's absences when it terminated his employment on July 22, much less that it even believed the absences were FMLA eligible. His FMLA interference claim therefore fails. *See Throneberry*, 403 F.3d at 979 (8th Cir. 2005) ("[A] reason for dismissal insufficiently related to FMLA leave will not support recovery under an interference theory." (quoting *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 961 (10th Cir. 2002)).

Bradley also appeals the adverse grant of summary judgment on his failure-to-accommodate[3] claim under Title II of the ADA.[4] Title II provides:

---

[3]At oral argument, Bradley confirmed that his ADA claim is based solely on LRW's failure to accommodate his diabetes by excepting him from its mandatory safety shoe policy.

[4]Plaintiffs typically bring employment discrimination cases under Title I of the ADA, which addresses employment. Bradley claimed violations of both Title I and Title II, but the district court determined that his Title I claim failed because Bradley did not comply with the EEOC exhaustion requirements. *See* 42 U.S.C. § 12117(a). Bradley does not appeal the denial of his Title I claim.

[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. This court has not decided whether Title II applies to employment discrimination cases filed against public employers, and the circuits that have addressed this question are split. *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 n.1 (2001) (noting, without resolving, the circuit split); *Zimmerman v. Or. Dep't of Justice*, 170 F.3d 1169, 1178 (9th Cir. 1999) (holding that Title II does not state a cause of action for employment discrimination); *Bledsoe v. Palm Beach Cnty. Soil & Water Conservation Dist.*, 133 F.3d 816, 825 (11th Cir. 1998) (holding that Title II does state a cause of action for employment discrimination). We need not decide the issue to resolve this case, however, because even assuming that Bradley's failure-to-accommodate claim is cognizable under Title II, the claim fails.

Bradley alleges that LRW failed to accommodate his diabetes because it considered his failure to wear safety shoes when it decided to terminate his employment. Bradley argues that his diabetes caused his feet to swell when he wore the safety shoes and that LRW could have reasonably accommodated his disability by periodically allowing him to wear different shoes. Bradley presents no evidence, however, that he ever requested such a workplace accommodation or that he even told anyone at LRW about his problem with the safety shoes. As LRW had no notice that Bradley sought accommodation, it had no duty to accommodate him, regardless of whether his proposed accommodation is reasonable. *See Ballard v. Rubin*, 284 F.3d 957, 962 (8th Cir. 2002) (holding that an employee must provide his employer with "enough information that, under the circumstances, [the employer] can be fairly said to know that [the employee] sought accommodation for his disability").

Accordingly, we affirm the district court's grant of summary judgment to LRW on both the FMLA and the ADA claims.

_____