# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-3786

_____

Kendrick Johnson

*Plaintiff - Appellant*

v.

Wheeling Machine Products; U.S. Steel Tubular Products, Inc.;
United States Steel Corporation

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff

_____

Submitted: December 11, 2014
Filed: February 20, 2015

_____

Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Kendrick Johnson appeals from the district court's[1] grant of summary judgment in favor of his employer, U.S. Steel Tubular Products, Inc., and related defendants.[2] Johnson brought this action under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601-2654, alleging that U.S. Steel retaliated against him for taking protected FMLA leave, failed to reinstate him after a period of protected leave, and otherwise unlawfully interfered with his FMLA rights. We affirm, although on a ground different from that relied upon by the district court.[3]

I.

The facts are presented in the light most favorable to Johnson. In May 2004, Johnson began working at a U.S. Steel plant in Pine Bluff, Arkansas. He was eventually promoted to a lead position that sometimes required him to drive a forklift. Johnson was scheduled to work May 12 through May 15, 2011. On May 12, he informed his supervisor that he was not feeling well. Johnson was suffering from blurred vision, a stiff neck, back pain, and a "major" headache, and he claims that he felt as though his head would "explode." Johnson waited for employee-relations supervisor Tammara Love to arrive, but when she still had not arrived several hours into Johnson's shift, he left her a voicemail, in which he stated that he was not feeling well and was leaving work to see a doctor.

---

[1]The Honorable Brian S. Miller, Chief Judge, United States District Court for the Eastern District of Arkansas.

[2]Johnson also named as defendants United States Steel Corp. and Wheeling Machine Products. We will refer to all defendants collectively as "U.S. Steel."

[3]We may affirm the district court's grant of summary judgment on any grounds supported by the record. Evance v. Trumann Health Servs., LLC, 719 F.3d 673, 679 (8th Cir. 2013).

Johnson left work and went to a nearby health care clinic, where he saw physician assistant Stephen Stewart,[4] whom he had never seen before. Stewart diagnosed Johnson with high blood pressure, prescribed him blood-pressure medication, and told him to follow up with his regular physician. Stewart did not indicate when Johnson should schedule the follow-up appointment. Stewart gave Johnson a note, asked him to fill in his own name, and then signed the note, which stated that Johnson was seen at the clinic and could return to work on May 16, 2011. Johnson returned to the plant and gave the note to a supervisor, explaining that he would be back on May 16. Johnson also left Love another voicemail, in which he stated that he had been taken off work for a few days and that he had left a work excuse with his supervisor.

The next day, May 13, Love called Johnson and asked him to come in to discuss the note from Stewart. She asked him who had written his name on the note, and he explained that he had filled in his own name at Stewart's request. Love instructed him to return to the clinic and get another excuse. Later that day, Johnson returned with a second note, which a paramedic at the clinic had signed because Stewart was busy. Love rejected the note, telling Johnson that it was not acceptable and that he needed to obtain another note that stated the reasons for being off work. She said that she would prefer if he brought the note back before the end of the day. U.S. Steel's attendance policy also required that, under certain circumstances, employees provide written documentation from their health care providers stating that they were "totally disabled from working" on the days of their absence, and Love claims that the note violated this policy, although Love never communicated this to Johnson. Johnson went to procure a third note, but the clinic would not give a more detailed explanation for his absence.

---

[4]Although the parties describe Stewart as a doctor, his notes and letters indicate that he is a certified physician assistant. See 29 C.F.R. 825.125(b) (defining "health care provider" to include "physician assistants . . . authorized to practice under State law and . . . performing within the scope of their practice as defined under State law").

According to Love, Johnson was suspended on May 16, 2011, and he was terminated on May 18. Emails, memoranda, and letters by Love and other agents of U.S. Steel indicate that Johnson had been suspended and then terminated for altering, falsifying, or forging the work excuse. From May 12 until the time of Johnson's termination, U.S. Steel never provided him with notice of his FMLA rights and obligations. Nor was such notice included in the employee handbook.

On May 18, 2011, Stewart faxed new copies of the work excuses to Love and explained that he had, in fact, given the excuses to Johnson. Later, Stewart provided a personally signed letter explaining that Johnson had been to see him in the clinic and that, to his knowledge, none of the work excuses were falsified. Johnson was not reinstated to his position.

Sometime after his termination, Johnson saw a physician at his regular doctor's office, who found that his blood pressure was normal and who advised him to use exercise to control it. Johnson did not offer any evidence to show the specific date on which this follow-up visit took place. Nor did Johnson offer evidence that he had any further communication or appointments with Stewart regarding treatment for or updates on his condition.

Johnson filed this action, alleging violations of the FMLA.[5] The district court granted summary judgment in favor of U.S. Steel, concluding that Johnson had not provided sufficient notice of his need for FMLA leave and that Johnson had not established that his employer's proffered reason for terminating him was pretextual.

---

[5] Johnson also asserted a claim that U.S. Steel discriminated against him on the basis of race in violation of Title VII, 42 U.S.C. § 1981, and the Arkansas Civil Rights Act. The district court granted summary judgment in favor of U.S. Steel on these claims, and Johnson has not appealed that ruling.

## II.

We review a grant of summary judgment *de novo*. Bosley v. Cargill Meat Solutions Corp., 705 F.3d 777, 779 (8th Cir. 2013). A movant is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those materials, if any, that demonstrate an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Assuming there has been adequate time for discovery, the court must enter summary judgment if the nonmovant then "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

We have recognized three categories of FMLA claims arising under 29 U.S.C. § 2615(a)(1)-(2) : (i) entitlement claims, in which an employee alleges a denial of a benefit to which he was entitled under the statute; (ii) discrimination claims, in which an employee alleges that the employer discriminated against him in the terms and conditions of employment because the employee exercised rights to which he was entitled under the FMLA; and (iii) retaliation claims, in which an employee alleges that the employer took adverse action against him for opposing a practice made unlawful under the FMLA. Pulczinski v. Trinity Structural Towers, Inc., 691 F.3d 996, 1005-06 (8th Cir. 2012). Johnson's complaint alleges that U.S. Steel interfered with his FMLA rights, failed to provide him with notice of his rights and obligations under the FMLA, failed to reinstate him when his leave ended, and retaliated against him for taking FMLA leave. Although Johnson labels his claims "retaliation" and "interference" claims, for clarity and consistency with our more recent FMLA cases, we will refer to them as "entitlement" and "discrimination" claims. See id.

To succeed on his entitlement claim for failure to reinstate, Johnson must establish that he was, in fact, entitled to FMLA leave and reinstatement. See Stallings v. Hussmann Corp., 447 F.3d 1041, 1050 (8th Cir. 2006) ("In an [entitlement] claim, an 'employee must show only that he or she was entitled to the benefit denied.'" (quoting Russell v. N. Broward Hosp., 346 F.3d 1335, 1340 (11th Cir. 2003))). Similarly, to succeed on his claim that he was discriminated against for taking leave, Johnson must show that he was entitled to leave under the FMLA. See Darby v. Bratch, 287 F.3d 673, 680 (8th Cir. 2002) (noting that an employee "could be disciplined for taking unpaid leave not covered by the FMLA"). Since Johnson argues that he was entitled to FMLA leave due to his high blood pressure, both of these claims are necessarily predicated on the existence of a qualifying serious health condition. See Rankin v. Seagate Techs., Inc., 246 F.3d 1145, 1147 (8th Cir. 2001) ("Where absences are not attributable to a 'serious health condition,' . . . [the] FMLA is not implicated and does not protect an employee against disciplinary action based upon such absences."); Frazier v. Iowa Beef Processors, Inc., 200 F.3d 1190, 1195 (8th Cir. 2000) ("Where an employee has not shown his absences to be a result of a serious health condition, he is not protected by the FMLA.").

The FMLA entitles an employee to twelve workweeks of leave during a twelve-month period if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Under the Department of Labor's regulations, a serious health condition is "an illness, injury, impairment or physical or mental condition" that involves either inpatient care or "continuing treatment by a health care provider as defined in [29 C.F.R.] § 825.115." 29 C.F.R. § 825.113(a) (2010). Johnson claims that he has a serious health condition under the "continuing treatment" prong of the regulations. A serious health condition involving continuing treatment includes, in pertinent part:

(a) *Incapacity and treatment.* A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

> (1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider . . . ; or

> (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

Id. § 825.115. "Treatment" includes "examinations to determine if a serious health condition exists and evaluations of the condition." Id. § 825.113(c). "A regimen of continuing treatment includes, for example, a course of prescription medication . . . ." Id. "Whether additional treatment visits or a regimen of continuing treatment is necessary within the 30-day period shall be determined by the health care provider." Id. § 825.115(a)(4).

Johnson argues that because U.S. Steel did not follow the FMLA's certification procedures, it is precluded by our holding in Thorson v. Gemini, Inc., 205 F.3d 370 (8th Cir. 2000), from now challenging the existence of a serious health condition.[6] Thorson did not create a *per se* preclusion rule, however, that would apply in all cases

---

[6]Johnson also argues that the serious-health-condition issue is not before us because U.S. Steel failed to argue the issue in its initial motion for summary judgment. We disagree. Although U.S. Steel's arguments regarding serious health condition were located in its accompanying brief under a heading entitled "FMLA Retaliation" and were set forth primarily in the context of notice, as explained above, Johnson's "retaliation" claim is really a discrimination claim under our precedent, and U.S. Steel's argument applies equally to the entitlement and discrimination claims. U.S. Steel's brief included arguments that Johnson did not have a serious health condition at all. Thus, Johnson was required to make a showing sufficient to establish the existence of a serious health condition.

in which an employer fails to avail itself of the FMLA's certification procedures. Instead, <u>Thorson</u> merely held that an employer could not use medical evaluations conducted long after the period of incapacity to create a genuine dispute of material fact over a plaintiff's incapacity when the plaintiff offered contemporaneous medical evidence of incapacity. See <u>id.</u> at 376-82; <u>see also</u> <u>Murphy v. FedEx Nat'l LTL, Inc.</u>, 618 F.3d 893, 901-02 (8th Cir. 2010).

Johnson contends that even if <u>Thorson</u> does not bar U.S. Steel's challenge, he has met both definitions of "serious health condition" involving continuing treatment laid out in § 825.115(a)(1)-(2). Johnson bears the burden of establishing that he had a serious health condition entitling him to FMLA leave. See <u>Ballato v. Comcast Corp.</u>, 676 F.3d 768, 772 (8th Cir. 2012). Johnson first argues that because he was treated for high blood pressure on May 12 and then treated for a second time at his regular doctor's office after his termination, the definition under (a)(1) (the "two-treatments definition") is met. But Johnson has offered no evidence that his follow-up visit occurred within thirty days of May 12—his first day of incapacity—as the regulations require. See 29 C.F.R. § 825.115(a)(1). In his deposition, Johnson stated that he could not recall the exact date of his follow-up appointment, only that "it was very shortly after [his] termination." Johnson's affidavit provides no additional details about the timing of the follow-up appointment.

In addition, Johnson stated that Stewart did not indicate a time period within which he should follow up with his regular doctor. He therefore has not shown that Stewart, his health care provider, determined that a second visit was necessary within thirty days, as the regulations require. See <u>id.</u> § 825.115(a)(4); FMLA Final Rule, 73 Fed. Reg. 67,934, 67,948 (Nov. 17, 2008) (explaining that paragraph (4) was added to clarify that it is the health care provider, rather than the employee, who determines not only whether an additional visit is necessary, but when the second visit should occur). Vague assertions about a follow-up appointment without specificity as to its timing are not sufficiently probative to permit a finding in Johnson's favor and thus

are insufficient to establish a genuine dispute of material fact on the question whether Johnson's condition meets the two-treatments definition.

Johnson also points out that he was treated for high blood pressure, received prescription medication, and was instructed to follow up at some point with his regular doctor, and he argues that those facts meet the definition in § 825.115(a)(2) (the "regimen definition"). A course of prescription medication can qualify as a "regimen of continuing treatment." 29 C.F.R. § 825.113(c). Thus, a single treatment by a health care provider resulting in a prescription, coupled with the requisite period of incapacity, can establish a serious health condition under the regimen definition. As the regulation makes clear, however, the regimen of continuing treatment—in this case, a course of prescription medication—must also be "under the supervision of the health care provider." Id. § 825.115(a)(2).

We believe that the supervision requirement must be given effect. To interpret the regulation as requiring only a single visit to a health care provider, followed by a course of prescription medication, would be to read the "supervision" language out of the provision. The supervision language has been part of the regimen definition since the interim regulations were implemented in 1993. See FMLA Interim Final Rule, 58 Fed. Reg. 31,794, 31,817 (June 4, 1993). When the Department of Labor promulgated final rules in 1995, it clarified that a "regimen of continuing treatment" includes a regimen of prescription medication because "[i]t is envisioned that a patient would be under continuing supervision in this context, for example, where the patient is advised to call if the condition is not improved." FMLA Final Rule, 60 Fed. Reg. 2180, 2195 (Jan. 6, 1995).

As the plain language of the regulation and the regulatory history demonstrate, that a health care provider prescribes medication does not necessarily mean that the provider is "supervising" the prescription regimen. By requiring that the health care provider supervise the regimen, the regulation helps to ensure that minor conditions

will fall outside the FMLA's coverage, as Congress intended. See S. Rep. No. 103-3, at 28 (1993), reprinted in 1993 U.S.C.C.A.N. 3, 30 (explaining that the term "serious health condition" is not intended to cover short-term conditions or minor illnesses). If a person's health condition is indeed "serious," it follows that the patient's regimen of continuing treatment would involve either supervision—for example, a phone call with the health care provider to communicate updates on the patient's condition and progress—or a follow-up appointment soon after the first visit (which, if fulfilled, could satisfy the two-treatment definition).

"Supervision" is defined as "the action, process, or occupation of supervising; *esp* : a critical watching and directing (as of activities or a course of action)." Merriam-Webster's Collegiate Dictionary (10th ed. 1998). To "supervise" is to "superintend" or "oversee." Id. Stewart did not oversee, watch, or direct any part of Johnson's treatment regimen; he simply prescribed Johnson medication and sent him on his way. Johnson does not claim that, after receiving his prescription, he followed up with Stewart regarding his treatment, in person or by phone. Furthermore, there is no evidence that Stewart advised Johnson to call him if complications arose or his condition did not improve.

Nor did any physician at Johnson's regular doctor's office supervise a regimen of continuing treatment. First, as explained above, it is unclear when Johnson visited his regular doctor's office and whether he was still on his prescription medication at the time. Second, at Johnson's follow-up appointment, his prescription was not renewed, and he was instructed instead to control his blood pressure with exercise. Under the regulations, exercise does not constitute a "regimen of continuing treatment." See 29 C.F.R. § 825.113(c) (explaining that "bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider" are not sufficient). Thus, no health care provider was supervising Johnson's prescription regimen, and he did not undergo "a regimen of continuing treatment under the supervision of the health care provider." Accordingly, Johnson

has not met his burden of establishing a genuine issue of material fact on the issue whether he met the regimen definition for a serious medical condition.

Johnson asserts a number of arguments to support an alternative theory of entitlement liability. He argues, for example, that U.S. Steel's requirement of immediate certification from a health care provider stating that he was "totally disabled from working" and its attempt to send him to a company doctor were unlawful under the FMLA.[7] He claims that because the work excuse was the reason for his termination, those requirements prejudiced him. To succeed on this claim, however, Johnson must be able both to demonstrate harm and to draw a connection between the requirements and a resulting deprivation of his FMLA rights. See Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 90 (2002) (holding that employees bear the burden of proving "real impairment of their rights and resulting prejudice"). Assuming, without deciding, that U.S. Steel's requirements exceeded that which an employer may permissibly require from employees taking FMLA leave, Johnson's failure to demonstrate that he was entitled to FMLA leave renders moot his argument that those requirements were unlawful under the FMLA.

Johnson also claims that U.S. Steel failed to provide him with notice of his rights and obligations under the FMLA. Assuming this is true, Johnson must show that U.S. Steel's alleged failure to provide him with this information prejudiced him. Technical violations of the FMLA are not actionable unless they harm the employee. See, e.g., id. at 88-91; Bellone v. Southwick-Tolland Reg'l Sch. Dist., 748 F.3d 418,

---

[7]The FMLA regulations provide a process for employers to procure certification of a serious health condition from the employee's health care provider, but the employee typically has fifteen days to return the requested certification. See id. § 825.305(a)-(b). Furthermore, the employer may require certification that an employee cannot perform the essential functions of the job. Id. § 825.306(a)(4). There is nothing in the regulations that requires the certification to state that the employee is "totally disabled from working."

423 (1st Cir. 2014). Johnson has not demonstrated how any alleged technical violations could have prejudiced him if his condition did not qualify him for FMLA leave in the first place.

Because Johnson has no additional arguments showing that he has a serious health condition, he has failed to offer evidence sufficient to avoid summary judgment. We therefore need not consider the parties' arguments regarding the sufficiency of Johnson's notice to the employer and the reasons for Johnson's termination.

The judgment is affirmed.

_____