STEPHANIE M. ROSE, JUDGE UNITED STATES DISTRICT COURT
Before the Court are the parties' cross-motions for summary judgment, [ECF Nos. 33; 35]. The parties requested a hearing on their motions, but the Court finds that the issues can be resolved without it. See LR 7(c). The parties' motions have been fully submitted and are ready for a decision. For the reasons set out below, the motions are DENIED.
I. BACKGROUND[1]
Defendant Rockwell Collins, Inc. (the "Company") is a publicly owned company that produces communication and aviation electronic solutions for both commercial and government applications. [ECF No. 35-1 ¶ 1].[2] Defendant hired Plaintiff Jennifer *852 Holladay as an assembly operator at its Coralville, Iowa, plant on May 29, 2007, where she was employed until her termination on July 21, 2016. Id. ¶ 2; [ECF No. 34-1 ¶ 52]. While employed with the Company, Plaintiff was a member of the collective bargaining unit at the Coralville plant represented by Local Union No. 1634 of the International Brotherhood of Electrical Workers ("Local 1634"). [ECF No. 35-1 ¶ 3].
Defendant and Local 1634 were parties to a collective bargaining agreement (the "CBA") effective from May 4, 2013, through May 4, 2018. Id. ¶ 4. Article XX of the CBA governs leaves of absence. It states, in relevant part:
All leaves of absence shall be requested in writing and approved or disapproved in writing by the COMPANY. A request for leave of absence in writing is required for all absenteeism extending beyond three (3) consecutive days. Except as stated below, leaves of absences for sudden and unforeseen illness or accident, shall be granted automatically to seniority employees.
Section 1. Illness or Accident : Employees who are absent because of unforeseen illness or accident must apply for formal leave in writing as soon as practical.... Adequate proof must be presented by the employee, or a member of the employee's family on his/her behalf, that it was physically impossible for the employee to contact the COMPANY for consideration of a leave of absence or no automatic leave may be assumed and the employee shall be deemed to be absent without authorization.
....
Any employee, who is known to be ill, supported by satisfactory evidence, will be granted a [medical leave of absence] automatically, provided he/she complied with the above.
[ECF No. 36 at 5]. The excerpt of the CBA in the record does not state the consequences of failing to follow the procedures in Article XX. Likewise, the excerpt does not explain what constitutes "[a]dequate proof" that an employee could not contact the Company, the form of written leave for approval, or how to determine whether a request for leave has been made "as soon as practical."
The parties submitted several of Defendant's business records detailing policies that appear to, collectively, set out Defendant's leave of absence policy. The "Coralville Operations Attendance Policy" states that "[a]bsences beyond 3 consecutive working days without an approved leave of absence are considered a voluntary quit (AWOL)." Id. at 11. In the case of unforeseen medical absences, a "Medical Absences-Roles & Responsibilities" policy instructs employees to: (1) "[n]otify your *853 facilitator of your absence"; (2) "[p]rovide a doctor's statement with the length of absence to your facilitator for proper coding of absence"; and (3) "[i]f you are unable to return to work on the 4th day, a doctor's statement is required by the beginning of the 4th day." Id. at 7. For medical absences exceeding three consecutive days, employees must "[c]ontact Health Services to initiate a medical leave of absence (MLOA).... A doctor's statement or completed Accident & Sickness [form]... must be received by Health Services or your facilitator by the beginning of the fourth day to excuse your absence and initiate your medical leave." Id. The parties agree these two policies were in place at the Coralville facility during the relevant time, but Plaintiff argues the evidence in the record is insufficient to determine whether Defendant actually followed these policies. See [ECF No. 37-2 ¶¶ 12-13].
As a member of Local 1634 (a "Collective Bargaining Employee") Holladay received and assented to a "Medical Leave of Absence Checklist." [ECF No. 35-1 ¶ 7]. For medical absences exceeding three consecutive days, Collective Bargaining Employees are instructed to "[c]ontact your Health Services ... and provide a medical statement ... from your physician no later than the start of your shift on the fourth day.... Failure to comply will result in you being AWOL (Absent without Leave), and will be terminated." [ECF No. 36 at 13]. The medical statement must contain: (1) the nature of the illness or injury; (2) the name of the employee's health care provider; (3) the date and time the employee last worked; (4) the expected date of return (if known); and (5) the name of the employee's supervisor. Id. The checklist stresses that "[p]hone calls are appreciated and are a courtesy, but not considered an approved leave of absence." Id. This point is further emphasized in a summary of the checklist, which states that a Collective Bargaining Employee "calling into their Manager or Health Services is NOT considered an Approved Medical Leave of Absence." Id. at 12. It adds, "if a [Collective Bargaining Employee] does NOT have the proper medical leave of absence statement from their Doctor to Health Services by the start of the employee's shift on the 4th day, the employee is considered AWOL ... and will be terminated." Id. Charles Holder, the business manager of Local 1634, testified in a deposition that the policy set out in the Medical Leave of Absence Checklist was consistently followed at the Coralville Plant. Id. at 83.
Plaintiff took leave under the Family Medical and Leave Act ("FMLA" or "the Act") in 2012 and 2015 for her own serious health condition. [ECF No. 35-1 ¶¶ 14-15, 18-19]. She also took approved FMLA leave in 2014 to care for one of her parents. Id. ¶¶16-17. On June 20, 2016, Plaintiff submitted to Defendant an "FMLA Request Form" for her own serious health condition. [ECF No. 36 at 19-21]. She described the condition as "recurrent migraines which are sporadic," and indicated that the dates on which she would require leave were unknown. Id. at 21. On June 29, 2016, Plaintiff submitted to Defendant a "Certification of Health Care Provider for Employee's Serious Health Condition" in support of her request for FMLA leave. Id. at 22-26. Plaintiff's physician, Dr. Ann Soenen, completed the certification. Id. at 25. Dr. Soenen described Plaintiff's condition as "intractable migraines" and indicated she would "need to attend follow-up treatment appointments or work part-time or on a reduced schedule." Id. at 24-25. She estimated that this reduced schedule would consist of one or two hours per day, one day per week, from June 16, 2016, through December 16, 2016. Id. at 25. Dr. Soenen also estimated that, over the subsequent six months, Plaintiff would suffer *854 from flare-ups two-to-three times per month, and would be incapacitated for one-to-two days per episode. Id.
Defendant approved Plaintiff's FMLA request in an "FMLA Designation Notice" dated June 29, 2016. Id. at 27. The notice approved Plaintiff for intermittent FMLA leave for her migraines for "1 to 2 hours per day for 6 months and for flare ups 2 to 3 times per month; up to 2 days in duration." Id. The Designation Notice instructed Plaintiff that "[i]f you are approved for flare ups, you must designate your leave as FMLA or [sic] any time you call in, otherwise your absences may count against the absence/attendance policy." Id. It also stated, "[i]f the absence(s) will be greater than 3 consecutive days regarding your own health condition, a medical leave of absence is required." Id.
Once the Company provides an employee with a Designation Notice that his or her FMLA leave is approved, that employee may identify an absence as FMLA leave by submitting a "Family Medical Leave Absence Identification Form" ("FMLA Absence Form") to his or her supervisor. [ECF No. 35-1 ¶ 26]. On that form, the employee lists the appropriate absence code, the date of the absence, and the amount of hours that should be treated as FMLA leave. See [ECF No. 36 at 31]. The FMLA Absence Form states that it should be completed and returned to the employee's supervisor for processing "within 2 business days of your return or receiving your designation letter." Id. Defendant states that its "sole requirement" for designating an absence as FMLA leave is the submission of the FMLA Absence Form. See [ECF No. 39 at 4].
From June 30, 2016, through July 15, 2016, Plaintiff was absent for all or part of eight work days. See [ECF No. 35-1 ¶ 35]. She took FMLA leave on June 30 (two hours), July 5 (eight hours), July 13 (eight hours) and July 14 (eight hours).[3] Id. Other absences during this period included one full vacation day and two full sick days for a non-FMLA-related illness. See id.
Plaintiff was absent from work beginning Monday, July 18, 2016, and continuing through July 21, 2016. Id. ¶ 34. The parties agree that, on each of those days, Plaintiff left a voicemail in the early morning for her supervisor, Kathy Kooyman, to report her absence from work. See [ECF No. 37-2 ¶ 36]. However, the parties disagree as to any other details Plaintiff provided in those voicemails. In her deposition, Plaintiff testified that she said in her July 21 voicemail, "I had a migraine and I would not be in that day." [ECF No. 36 at 100-01]. In a subsequent affidavit, Plaintiff repeated her assertion as to the content of the July 21 voicemail, but added that "[o]f the voicemails I left between July 18 and July 20, I recall having specifically mentioned my migraine in one or two of the messages." Id. at 145.
According to Defendant, Plaintiff never specified migraines, and only stated she would be absent due to either an "illness" or "doctor's visits." [ECF No. 35-1 ¶ 36]. Kooyman testified in a deposition that she "write[s] down in a steno book when somebody calls in and what they leave." [ECF No. 36 at 115]. In connection with Plaintiff's *855 absences on July 18-21, Kooyman wrote, "ill/out," "ill out," "DR," and "DR," respectively. Id. at 63. Plaintiff disagrees that these notes are determinative as to what Plaintiff said in the voicemails. Plaintiff observes that Kooyman testified during her deposition that she would write down what employees say in the voicemails "without too much description." Id. at 115. When asked directly if Plaintiff mentioned "migraine or headache at all" in the voicemails, Kooyman testified that she did not recall. Id.[4]
By the scheduled start of her shift at 6:00 a.m. on July 21, Plaintiff had not submitted a doctor's note for her absences on July 18-21. [ECF No. 35-1 ¶ 39]. At 7:35 a.m. on July 21, Plaintiff called the Company's Health Services Department and spoke to Nurse Kerry Much. Id. ¶ 41. Plaintiff asked Much if she could wait to submit a doctor's note for her absences until the next day, but Much advised her that a note was due "now." Id. At 9:25 a.m. that morning, Defendant's Health Services Department received doctor's notes regarding Plaintiff's absences on July 18-21. Id. ¶ 46. One note indicated that Plaintiff was seen for treatment on July 18, and stated that she could return to work on either July 19 or July 20. [ECF No. 36 at 62]. The second note, signed by Dr. Soenen, asked that Plaintiff be excused from work on July 20 and July 21 "due to illness," and stated that she could return to work on July 22. Id. at 61. Neither note specified the illness for which Plaintiff missed work.
Meanwhile, at approximately 8:00 a.m., Kooyman contacted Alisha Pedersen, a labor and employee relations specialist with Defendant's Human Resources Department. [ECF No. 35-1 ¶ 43]. Kooyman told Pedersen that Plaintiff had been absent three consecutive days and had not submitted a doctor's note prior to the start of her shift on the fourth day of absence. Id. Pederson passed this information on to Charles Holder. Id. ¶ 45.
After submitting her doctor's notes, Plaintiff called Kooyman. Id. ¶ 47. Defendant asserts that Plaintiff inquired on the call about her job status but did not state on the call that she intended to designate her absences on July 18-21 as FMLA leave. Id. ¶¶ 47-48. Plaintiff denies that she asked about her job status during that call, but does not deny that she failed on the call to state an intention to designate her absences as FMLA leave. See [ECF No. 37-2 ¶¶ 47-48].
Later on July 21, Pedersen sent an email to Amy Clefisch, an employee relations manager at the Company, and Mike Miller, a human resources business partner, informing them of Plaintiff's absences on July 18-21 and her failure to submit a doctor's note by the start of her shift on July 21. See [ECF No. 36 at 41]. She recommended that Plaintiff be terminated based on Article XX of the CBA and the Coralville Operations Attendance Policy.[5] See id. Clefisch and Miller approved the proposed termination later that afternoon. See id. at 43. It is undisputed that, prior to Plaintiff's termination, Pedersen, Clefisch, and Miller were unaware of the June 29, *856 2016 Designation Notice granting Plaintiff intermittent FMLA leave for her migraines. See [ECF No. 38-1 ¶¶ 28-51].
Later that day, Pederson and Holder called Plaintiff to notify her that her employment was terminated because "she did not follow established procedures regarding medical absences and attendance." [ECF No. 35-1 ¶ 49]. Defendant also alleges that at no point on the call did Plaintiff say her absences on July 18-21 qualified as FMLA leave. Id. ¶ 50. Plaintiff disputes this fact, noting that Holder testified during his deposition that he did not remember if Plaintiff "was asked for any explanation" on the call "or if she volunteered one." [ECF No. 36 at 85]. Plaintiff received a termination letter dated July 21, 2016, which explained, "Per Article XII Section 5 Termination of the IBEW 1634 contract with Rockwell Collins, your seniority and employment shall terminate if an employee is absent beyond three (3) consecutive working days without an approved leave of absence." Id. at 34. The letter said that Plaintiff was absent on July 18 and failed to report to work at the start of her shift on July 21. Id. The record does not include a copy of Article XII of the CBA, nor do the parties discuss in their briefs the relevance of this provision.
On July 22, 2016, Local 1634 filed a grievance on Plaintiff's behalf. [ECF No. 35-1 ¶ 52]. Defendant denied the grievance that same day. Id. ¶ 53. The denial, prepared by Kooyman, stated that Plaintiff was terminated for violating Article XX of the CBA, the Medical Absences-Roles and Responsibilities policy, and the Coralville Operations Attendance Policy. Id. ; see also [ECF No. 36 at 35]. The union did not appeal the denial. See [ECF No. 36 at 35].
Plaintiff commenced this action on October 19, 2017, by filing suit in the Iowa District Court for Johnson County. See [ECF No. 1-1]. Plaintiff asserted that Defendant interfered with her rights under the FMLA and, separately, retaliated against her for taking FMLA leave. See id. ¶¶ 19-20. Defendant removed to this Court on November 22, 2017. [ECF No. 1]. On April 11, 2018, the Court denied Defendant's Motion to Dismiss for lack of subject matter jurisdiction. See [ECF No. 22]. Thereafter, the parties stipulated that Plaintiff's claim "is a claim of interference with her substantive rights by denying the exercise of or attempt to exercise her rights under the [FMLA]." [ECF No. 30]. The parties completed discovery and filed the instant motions. Defendant seeks summary judgment in its favor on the merits, thus concluding this case. Plaintiff seeks summary judgment on the issue of Defendant's liability only, thus limiting any subsequent trial to the issue of Plaintiff's damages. See [ECF Nos. 33 at 2; 34 at 14].
II. STANDARD OF REVIEW
Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) ; Paulino v. Chartis Claims, Inc. , 774 F.3d 1161, 1163 (8th Cir. 2014). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." Amini v. City of Minneapolis , 643 F.3d 1068, 1074 (8th Cir. 2011) (citing Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." Anderson , 477 U.S. at 255, 106 S.Ct. 2505. Even so, at the summary judgment stage, courts must view "the facts in the light most favorable to the nonmoving party and giv[e] that *857 party the benefit of all reasonable inferences that can be drawn from the record." Pedersen v. Bio-Med. Applications of Minn. , 775 F.3d 1049, 1053 (8th Cir. 2015) (quoting Johnson v. Wells Fargo Bank, N.A. , 744 F.3d 539, 541 (8th Cir. 2014) ). To preclude the entry of summary judgment, the nonmovant must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial. Celotex Corp. v. Catrett , 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). But "the nonmoving party [need not] produce evidence in a form that would be admissible at trial in order to avoid summary judgment." Id. at 324, 106 S.Ct. 2548.
III. ANALYSIS
A. Standard for FMLA Interference Claims
An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" under the FMLA. 29 U.S.C. § 2615(a)(1). Interference claims are limited "to situations where the employee proves that the employer denied a benefit to which she was entitled under the FMLA, which include terminating an employee while on FMLA leave." Lovland v. Emp'r Mut. Cas. Co. , 674 F.3d 806, 811 (8th Cir. 2012). "Interference" also includes an employer using "the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions," counting FMLA leave "under 'no fault' attendance policies," and "manipulation by a covered employer to avoid responsibilities under the FMLA." Ballato v. Comcast Corp. , 676 F.3d 768, 772 (8th Cir. 2012) (citations omitted). "Although an employee 'can prove interference with an FMLA right regardless of the employer's intent,' the FMLA 'is not a strict-liability statute.' " Chappell v. Bilco Co. , 675 F.3d 1110, 1115 (8th Cir. 2012) (citations omitted).
In order to succeed on her FMLA interference claim, Plaintiff must show: (1) "she was eligible for FMLA leave"; (2) Defendant "was on notice of her need for FMLA leave"; and (3) Defendant "denied her benefits to which she was entitled under the FMLA." Hasenwinkel v. Mosaic , 809 F.3d 427, 432 (8th Cir. 2015). The parties only dispute the second and third of these elements. See [ECF No. 35-2 at 11]. If Plaintiff can establish them, "the burden shifts to [Defendant] to prove there was a reason unrelated to the employee's exercise of FMLA rights for terminating the employee." Ballato , 676 F.3d at 772.
B. Notice
"A claim under the FMLA cannot succeed unless the plaintiff can show that [she] gave [her] employer adequate and timely notice of [her] need for leave ...." Chappell , 675 F.3d at 1116 (citation omitted). "Adequate notice requires 'enough information to put the employer on notice that the employee may need FMLA leave.' " Id. (citation omitted). Federal regulations detail an employee's obligations as to the timing and content of FMLA notice, as well as his or her duty to comply with employer policies when giving such notice. See 29 C.F.R. § 825.303. The parties do not dispute whether the timing of Plaintiff's notice was adequate; instead, they focus their arguments on the content of the notice and whether it complied with Defendant's policies. The Court will address each of these issues in turn.
1. Content of notice
29 C.F.R. § 825.303 governs employee notice requirements for unforeseeable *858 FMLA leave.[6] Generally, "[a]n employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. § 825.303(b). What constitutes "sufficient information" will "[d]epend[ ] on the situation." Id. To that end, the regulations provide a non-exhaustive list of information that might be included in the notice:
[S]uch information may include that a condition renders the employee unable to perform the functions of the job; that the employee is pregnant or has been hospitalized overnight; whether the employee or the employee's family member is under the continuing care of a health care provider; if the leave is due to a qualifying exigency, that a military member is on covered active duty or call to covered active duty status (or has been notified of an impending call or order to covered active duty), that the requested leave is for one of the reasons listed in § 825.126(b), and the anticipated duration of the absence; or if the leave is for a family member that the condition renders the family member unable to perform daily activities or that the family member is a covered servicemember with a serious injury or illness; and the anticipated duration of the absence, if known.
Id. However, when, as here, "an employee seeks leave due to a qualifying reason, for which the employer has previously provided the employee FMLA-protected leave, the employee must specifically reference either the qualifying reason for leave or the need for FMLA leave." Id. An employer's obligations under the FMLA are not triggered when an employee merely calls in "sick" without providing more information. Id. ; see also Rask v. Fresenius Med. Care N. Am. , 509 F.3d 466, 472 (8th Cir. 2007) ("The employer must be made aware that the absence is due to a serious illness so the employer can distinguish it from ordinary 'sick-days,' or even malingering, as a type of unusual and privileged absence."). Once the employee has provided the employer with sufficient information to determine that the FMLA may apply to the leave request, "[t]he employer will be expected to obtain any additional required information through informal means." 29 C.F.R. § 825.303(b). An employee is obligated to comply with an employer's inquiries aimed at determining whether an absence is "potentially FMLA-qualifying." Id.
Plaintiff argues "the uncontroverted evidence shows [she] reported her absences as due to her migraine headaches in compliance with 29 C.F.R. § 825.303(b)." [ECF No. 37-1 at 3]. The Court agrees with the proposition underlying this statement. Defendant approved Plaintiff for intermittent FMLA leave for her migraines, and Plaintiff took FMLA leave for that reason prior to her absence on July 18, 2016. See [ECF No. 36 at 21, 27, 31]. Thus, if Plaintiff cited migraines as the reason for her absences in her voicemails to Kooyman on July 18-21, she complied with her obligations under 29 C.F.R. § 825.303(b), and it was Defendant's responsibility to make any further inquiries as to whether the FMLA applied to those absences. See 29 C.F.R. § 825.303(b).[7] But, *859 for the same reasons, if Plaintiff merely said in her voicemails that she was ill, without more, her notice is deficient and her interference claim must fail. See id. Clearly, what Plaintiff said in her voicemails to Kooyman is material to the outcome of this case. However, the Court disagrees with Plaintiff that the "uncontroverted evidence" shows she attributed her absences to migraines. In deposition testimony and an affidavit, collectively, Plaintiff asserts that she attributed her absences to migraines in at least two of the voicemails. See [ECF No. 36. at 100-01, 145]. But Defendant has contemporaneous written records of the voicemails that do not include that information, and Kooyman has testified that she has no recollection whether the voicemails referenced migraines. See id. at 63, 115. The parties dispute the content of the voicemails, and there is evidence to support each party's view. It is not for the Court to weigh competing evidence at the summary judgment stage. See Anderson , 477 U.S. at 255, 106 S.Ct. 2505.
Defendant claims Plaintiff's notice was deficient even if she did cite migraines in the voicemails. See [ECF No. 39 at 1-2]. Defendant argues this information alone would not allow Kooyman to recognize the leave request as implicating the FMLA. Defendant notes that Plaintiff had worked only three days in July 2016 prior to her absence on July 18, and the reasons for those absences varied between vacation leave, FMLA leave, and non-FMLA sick leave. See [ECF No. 35-1 ¶ 35]. Defendant also notes that Kooyman "had no knowledge that migraines were the condition for which Holladay had requested intermittent FMLA leave." [ECF No. 39 at 2].
Employees must provide notice of their need for FMLA leave so that employers can determine if the Act actually applies to the leave request; generally, FMLA notice must contain information to that end. See 29 C.F.R. § 825.303(b). However, when implementing the 2009 FMLA regulations, the Department of Labor ("DOL") "changed [ section 825.303(b) ] to include a different notice standard when the employee requests unforeseen leave due to a previously certified FMLA-qualifying reason." The Family and Medical Leave Act of 1993, 73 Fed. Reg. 67934-01, at 68009 (Nov. 17, 2008) (emphasis added).In that case, the notice must reference either the employee's qualifying reason or the FMLA. See 29 C.F.R. § 825.303(b) ; Germanowski v. Harris , 854 F.3d 68, 72 (1st Cir. 2017) ("What constitutes 'sufficient information' depends on whether the employee has received leave for that FMLA-qualifying reason before. If she has, 'the employee must specifically reference either the qualifying reason for leave or the need for FMLA leave.' " (quoting 29 C.F.R. § 825.303(b) ) ).This change was premised, in part, on the view that "employees are already aware that leave for the reason is FMLA-protected." 73 Fed. Reg. 67934-01, at 68009. It follows that a similar presumption applies to employers in such cases-i.e. , because they previously approved leave for the reason in question, they have already determined that "the FMLA may apply" to subsequent requests based on that same reason. 29 C.F.R. § 825.303(b). Thus, once an employee provides *860 notice that his or her request for leave relates to a reason for which the employer has already granted FMLA leave, notice is sufficient, and the onus is on the employer to make any necessary follow-up inquiries.[8] See id. If the employer's procedures inhibit its ability to make such inquiries, the consequences of that failure should not fall on the employee.
Defendant also argues that "[e]mployees ... have an affirmative duty to indicate both the need and the reason for the leave, and must let employers know when they anticipate returning to their position." Scobey v. Nucor Steel-Ark. , 580 F.3d 781, 786 (8th Cir. 2009) (quoting Woods v. DaimlerChrysler Corp. , 409 F.3d 984, 990-91 (8th Cir. 2005) ). Defendant claims this rule resolves the matter because Plaintiff's voicemails did not inform Kooyman of the duration of her absence. [ECF No. 38 at 12]. This argument is unavailing. The language from Scobey regarding an employee's anticipated return to work quoted Woods , which relied on 29 C.F.R. § 825.302(c). See Woods , 409 F.3d at 990-91.[9] This provision governs the content of notice for foreseeable FMLA leave. It states, "[a]n employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c). Defendant incorrectly claims that 29 C.F.R. § 825.303(b), governing the content of notice for unforeseeable absences, also requires that the notice include the anticipated duration of leave. [ECF No. 39 at 3]. That provision states, "[a]n employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. § 825.303(b). However, it proceeds to state, in relevant part, that "[d]epending on the situation, such information may include ... the anticipated duration of the absence, if known." Id. (emphasis added). Thus, under section 825.303(b), notification of the duration of an employee's unforeseen absence is only required in circumstances where: (1) the duration is known; and (2)the employer needs that information to determine if the Act may apply to the leave request. But, as noted above, if Plaintiff's notice referenced either the FMLA or her migraines, Defendant is presumed to have already determined that the FMLA may apply to the request and must make further inquiries if necessary. See id.
2. Compliance with other policies
Even if the content of an employee's notice satisfies the requirements of 29 C.F.R. § 825.303(b), an employee must still "comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.303(c). "If an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied." Id. As examples of policies with which an employee may need to comply, the regulations state that an employee needing emergency medical treatment would not need to call a "a designated number or a specific individual to request leave ... until his or her condition has stabilized and he or she *861 has access to, and is able to use, a phone." Id. Similarly, "written advance notice pursuant to an employer's internal rules and procedures" may not be required "in the case of an emergency requiring leave because of a FMLA-qualifying reason." Id. There is no indication that these examples are exhaustive.
When a Collective Bargaining Employee is absent from work for medical reasons, Defendant's policies require the employee to notify his or her manager of the absence. [ECF No. 36 at 7]. If the employee will be absent for at least four consecutive days, he or she must initiate a medical leave of absence with Defendant's Health Services Department. See id. That process requires an employee to submit a doctor's note by the beginning of the employee's shift on the fourth day. See id. An employee does not initiate or obtain a medical leave of absence by notifying his or her manager of the absence. See id. at 13. Failure to submit a doctor's note by the start of an employee's shift on the fourth consecutive day of absence results in the employee being deemed away without leave and, consequently, terminated. See id. Plaintiff's June 29, 2016 FMLA Designation Notice incorporated these policies by instructing Plaintiff "[i]f the absences(s) will be greater than 3 consecutive days regarding your own health condition, a medical leave of absence is required." Id. at 27.
Plaintiff argues that, by requiring Plaintiff to obtain a medical leave of absence-and thus a doctor's note-for absences exceeding three consecutive days, Defendant has imposed on her a burden that is more onerous than permitted under FMLA regulations. As explained in more detail below, FMLA regulations generally limit the circumstances in which employers may seek medical information from an employee's health care provider. See generally 29 C.F.R. §§ 825.307, 825.308. "[W]here an employer's internal policies conflict with the provisions of the FMLA, the FMLA controls and an employee need only comply with the requirements of the Act to invoke its protections." Callison v. City of Phila. , 430 F.3d 117, 121 (3d Cir. 2005) ; accord Santiago v. Dep't of Transp. , 50 F.Supp.3d 136, 153 (D. Conn. 2014) ; Harrigan v. Dana Corp. , 612 F.Supp.2d 929, 942 (N.D. Ohio 2009).Moreover, to the extent such conflicting policies result in violations of the FMLA or its regulations, those violations, "constitute interfering with, restraining, or denying the exercise of rights provided by the Act." 29 C.F.R. § 825.220(b).
Plaintiff argues that Defendant's leave of absence policy violates, and otherwise conflicts with, the FMLA's provisions on certification and recertification. See [ECF No. 34 at 9-14]. Under the FMLA, an employer may require that an employee substantiate the need for FMLA leave by providing a certification from his or her health care provider. See 29 U.S.C. § 2613(a) ; 29 C.F.R. § 825.305(a). If the employee submits a "complete and sufficient certification ... the employer may not request additional information from the health care provider." 29 C.F.R. § 825.307(a). FMLA regulations limit what information employers may seek in such a certification, but generally employers can ask for information as to the identity and specialization of the health care provider, the onset date of the condition, and medical facts and other information supporting the need for leave. See id. § 825.306(a)-(b).
After initial certification, FMLA regulations allow an employer to seek recertification, but only on a limited basis. The general rule is that an employer may request recertification "no more often than every [thirty] days and only in connection with an absence by the employee." Id.
*862 § 825.308(a). However, if the initial certification states that the minimum duration of the condition exceeds thirty days, the employer cannot request recertification before the expiration of that minimum period. Id. § 825.308(b).[10] This is the case whether the employee is unable to work intermittently or for a continuous period. See id. This temporal limitation is capped at six months; thus, if the duration of the condition is certified as lasting six months or more (including lifetime or indefinite conditions), then the employer may seek recertification every six months. Id. In certain circumstances, employers may request recertification in less than thirty days, namely: (1) when an employee requests an extension of leave; (2) a change in the circumstances described in the original certification; or (3) the employer receives information that "casts doubt" on the need for leave or the validity of the original certification. Id. § 825.308(c). An employer must allow an employee at least fifteen days from the date of its request to provide the recertification, and an employer may request the same information in a recertification as it could when seeking the original certification. Id. § 825.308(d) - (e).
The FMLA and its regulations do not address the permissibility and effect of employer polices that require employees to submit doctor's notes in connection with medical absences. In their briefs, the parties do not cite, and the Court has not identified in its own research, any appellate authority addressing whether doctor's note policies conflict with or violate the FMLA. Nor does it appear that any federal district court within the Eighth Circuit has taken up the issue. However, several federal district courts outside of this circuit have considered such policies, and the weight of those authorities have found that doctor's note policies do conflict with the FMLA's provisions on certification and recertification.
For example, in Marrero v. Camden County Board of Social Services , the defendant's policy handbook and the relevant union contract required employees to "provide a doctor's certificate for any absences in excess of five consecutive days." 164 F.Supp.2d 455, 464 (D.N.J. 2001). The court observed that, under FMLA regulations then in effect, "where an employee seeks 'unforeseeable' medical leave, an employer who wishes to confirm the employee's condition must first request a medical certification from the employee and then give the employee at least 15 calendar days in which to comply." Id. (citing 29 C.F.R. § 825.305 (2001) ). The court found that the FMLA regulations "seem[ed] to address the same notice issue as does the ... sick leave policy." Id. Because of this, and because the sick leave policy allowed employees fewer than fifteen days to provide a medical certification, the sick leave policy diminished the protections of the FMLA. Id. The court thus held that the sick leave policy was invalid in cases "where the FMLA is implicated." See id. at 464-65. The United States Court of Appeals for the Third Circuit has cited Marrero 's holding on this issue as support for the broader proposition that the FMLA is controlling in situations where an employer's policies conflict with the FMLA. See Callison , 430 F.3d at 121.[11]
*863 Courts have also found the Act's recertification regulations apply to doctor's note policies when an employer has already approved an initial FMLA certification. Like the Marrero court, some of those courts based their decisions on the alignment between the respective aims of the doctor's note policies and FMLA regulations. See Smith v. CallTech Commc'ns, LLC , No. 2:07-cv-144, 2009 WL 1651530, at *4, *6-7 (S.D. Ohio June 10, 2009) (finding that a policy requiring a doctor's note for every absence taken under intermittent FMLA leave was governed by FMLA recertification provisions when the purpose of the policy was to determine whether absences were FMLA-related); McClain v. Detroit Entm't , L.L.C. , 458 F.Supp.2d 427, 436 (E.D. Mich. 2006) (finding that a policy requiring additional medial documentation, potentially meant to ensure that absences were "encompassed within ... previously approved intermittent FMLA leave," was subject to FMLA recertification requirements).
Other courts, however, have found more broadly that doctor's note policies conflict with a clear intent in the Act and its regulations to limit the medical information employers can request in connection with FMLA leave. See Jackson v. Jernberg Indus., Inc. , 677 F.Supp.2d 1042, 1051-52 (N.D. Ill. 2010) ; Oak Harbor Freight Lines, Inc. v. Antti , 998 F.Supp.2d 968, 976 (D. Or. 2014). In Jackson , the court considered a policy that required employees to provide a doctor's note for each absence they wished to classify as intermittent FMLA leave. See 677 F.Supp.2d at 1044. The court acknowledged that the purpose of recertification under the FMLA differed from the defendant's doctor's note policy-the purpose of the former being to "ascertain the continued existence of an FMLA-qualifying medical condition," whereas the latter was meant to "verif[y] that an employee's particular absence is related to his already-certified FMLA-qualifying condition." Id. at 1050.
Nevertheless, the court found that the doctor's note policy conflicted with the FMLA and interfered with the plaintiff's rights under the Act. The court reasoned that the FMLA and its regulations "show an intent to limit medical verification to certification and recertification as delineated." Id. at 1051. It noted that the recertification process "protect[s] an employer in doubt but do[es] not provide for any other form of medical verifications." Id. The court also observed that FMLA regulations limit follow-up requests and the information that can be obtained during the certification process. See id. at 1051-52. The court concluded that "[h]ad Congress, or the [DOL], desired to permit employers to demand such intermittent verifications, the statute or regulations would provide as much. Instead, the regulations provide that an employer can verify the absence-condition connection by means of recertification." Id. at 1052. In addition, the court *864 found that the employer's policy constituted interference "on a practical level." Id. It reasoned that the policy could require an employee to obtain a doctor's note more than once per week, despite the employer's knowledge of the employee's underlying condition. Id. The court found that the policy thus discouraged the plaintiff from taking FMLA-certified leave. Id.
The Court finds that the FMLA governs Defendant's leave of absence policy as applied to employees who: (1) have submitted a valid FMLA certification; (2) have received approval by Defendant for intermittent FMLA leave; and (3) have otherwise given Defendant sufficient notice under the Act of their need for FMLA leave. There is a clear intent in the FMLA and its regulations to limit the frequency with which an employer can request information from an employee's health care provider. In no provision is this more apparent than in 29 C.F.R. § 307(a), which states, "[i]f an employee submits a complete and sufficient certification signed by the health care provider, the employer may not request additional information from the health care provider." Furthermore, Congress expressly envisioned that employers could only seek recertification "on a reasonable basis." 29 U.S.C. § 2613(e). The DOL has created a recertification regime to that end, which seeks to balance "the employer's right to receive updated medical information to support the need for the FMLA leave, and the employee's right to take such leave." 73 Fed. Reg. 67934-01, at 68022 ; see also 29 C.F.R. § 825.308. This balance reflects the broader purposes of the FMLA, which include "entitl[ing] employees to take reasonable leave for medical reasons ... in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(2)-(3).
As one noteworthy example of the balance the DOL sought when implementing the recertification regulations, an employer may generally only request recertification of long-term conditions every six months. See 29 C.F.R. § 825.308(b). When this regulation was proposed, the DOL received comments from employers stating that shorter intervals of time, such as thirty or sixty days, would be more appropriate. See 73 Fed. Reg. 67934-01, at 68022. Commenters representing employees stressed the burden recertification places on employees, particularly financial burdens due to charges from health care providers for medical exams and related paperwork. See id. at 68021. In settling on a six-month time frame, the DOL stressed it was "concerned about the burden frequent recertifications place on employees suffering from permanent or long-term serious health conditions." Id. at 68022. It ultimately found that a six-month period struck the proper balance between the competing interests of employers and employees. See id.
If not subject to the FMLA's regulations on recertification, intermittent medical verifications could upset this balance and erode an employee's protections under the Act. Employers would be allowed to circumvent the recertification regime's limitations on the frequency with which they can request information from an employee's health care provider, thus potentially exposing employees to the financial and other burdens the regime is meant to avoid. Employers could also demand that employees provide such information in fewer than fifteen days. See 29 C.F.R. § 825.308(d). The Court finds such demands could be ripe for abuse and discourage employees from taking FMLA leave, especially where an employee may not be able to see his or her physician on short notice.
*865 Defendant asserts "the doctor's note required by the Rockwell Collins policy is no more than a common sense means to obtain information about an employee's leave in the unusual situation when the absence has lasted more than three consecutive days." [ECF No. 38 at 17].[12] But, per Defendant's policies, the doctor's note must contain the following information: (1) the nature of the illness or injury; (2) the name of the employee's health care provider; (3) the date and time the employee last worked; (4) the expected date of return (if known); and (5) the name of the employee's supervisor. [ECF No. 36 at 13]. This information is strikingly similar to the information employers may request during recertification. Such information includes, in relevant part: "[a] statement or description of appropriate medical facts regarding the patient's health condition for which FMLA leave is requested"; "[t]he name ... of the health care provider"; "[t]he approximate date on which the serious health condition commenced, and its probable duration." See 29 C.F.R. § 825.306(a). If this is "not a request for recertification, then what [is] it?" Smith , 2009 WL 1651530, at *7.
Defendant also argues that the doctor's note it requires as part of its leave of absence policy cannot be a recertification because "it is significantly more limited in scope and medical detail" than a recertification containing all of the information listed in 29 C.F.R. § 825.306(a). [ECF No. 38 at 18]. But the regulations set out only the upper limit of what employers "may" seek. 29 C.F.R. § 825.306(a) ; see also id. § 825.306(b) (providing that employers need not use the DOL's forms for certification, but if they do, "no information may be required beyond that specified in §§ 825.306, 825.307, and 825.308"). Further, the purpose of certification and recertification is to allow the employer to "substantiate an employee's need for FMLA leave." 73 Fed. Reg. 67934-01, at 68010. If an employer believes it can accomplished this with less information than is set out in section 825.306(a), the regulations allow it to do so. See also Marrero , 164 F.Supp.2d at 466 ("While the regulations do permit an employer to request all of this information [in 29 C.F.R. § 825.306 ], the employer need not do so."). Also, as a practical matter, an employer cannot avoid the FMLA's restrictions on seeking medical information from an employee's health care provider by simply seeking some lesser amount of information. For the Court to rule otherwise would render illusory an employee's protections under the recertification regulations.
Defendant tries to distinguish the present case from Jackson and related cases by stressing that its leave of absence policy "does not require 'intermittent verifications' as a condition of receiving intermittent FMLA leave." [ECF No. 38 at 15]. Although that may be the case for absences of up to three consecutive days, Plaintiff's June 29, 2016 FMLA Designation Notice states, "[i]f the absence(s) will be greater than 3 consecutive days regarding your own health condition, a medical leave of absence is required. " [ECF No. 36 at 27] (emphasis added). A doctor's note is required to initiate a medical leave of absence. Id. at 13. Thus, a doctor's note is a condition of receiving FMLA leave for absences of four or more consecutive days. Similarly, Defendant states that its "sole requirement for designating [Plaintiff's] absence as intermittent FMLA leave was her submission of an [FMLA Absence Form]." [ECF No. 39 at 4]. But if the absence exceeded three consecutive days, *866 Plaintiff needed to submit a doctor's note in order to remain employed long enough to submit the FMLA Absence Form. Indeed, Defendant does not specify when precisely Plaintiff should have submitted her form in light of her swift termination from the Company.
Thus, to the extent Plaintiff otherwise provided notice of her need for FMLA leave-and the Court has already found there is a genuine factual dispute as to this issue-Defendant was required to give her at least fifteen calendar days to comply with a request for a doctor's note. See 29 C.F.R. § 825.308(d).[13] Defendant's requirement that Plaintiff submit a doctor's note by the start of her shift on the fourth consecutive day of absence clearly conflicts with this standard and violates FMLA regulations. Therefore, Plaintiff was not required to comply with this element of Defendant's policies. See Callison , 430 F.3d at 121. Defendant does not assert that Plaintiff violated any other of Defendant's notice or procedural requirements for granting leave. Therefore, if Plaintiff stated in her voicemails to Kooyman on July 18-21 that she was to be absent on account of her migraines, that notice would not be deficient for her failure to submit a doctor's note by the start of her shift on July 21.[14]
Even if the doctor's note element of Defendant's leave of absence policy cannot be viewed as a recertification request, uncertainty remains as to the interaction between FMLA leave and Defendant's leave of absence policy. Notably, Pedersen testified at her deposition that approved FMLA leave could be considered an approved leave of absence, but provided no further details. See [ECF No. 36 at 139]. Plaintiff seizes on this statement to argue that she complied with the leave of absence policy. See [ECF No. 37-1 at 11-13]. Defendant tries to clarify the relationship between the policy and the FMLA by giving an unhelpful example that does not involve intermittent leave. See [ECF No. 39 at 4-5]. This genuine factual dispute as to whether Plaintiff complied with the leave of absence policy also makes summary judgment on the issue of Plaintiff's FMLA notice inappropriate.[15]
3. Conflict with certification, failure to clarify
Defendant asserts two additional grounds on which Plaintiff's notice was legally deficient. First, Defendant argues that the notice was inadequate because "the period of absence-four consecutive days-significantly differed from the absences authorized in her Certification and the intermittent FMLA leave she had previously taken pursuant to this Certification." [ECF No. 38 at 10]. Plaintiff's certification stated that she would need a *867 reduced schedule of one or two hours per day, one day per week, for a period of six months; and that she would suffer from flare-ups two-to-three times per month, for one-to-two days per episode. [ECF No. 36 at 25].
Defendant cites Chappell v. Bilco Co. , 675 F.3d 1110 (8th Cir. 2012), for the proposition that "[n]otice of intermittent leave may be inadequate where the absence at issue is unsupported by the physician's certification on file with the employer." [ECF No. 35-2 at 12]. In Chappell , the plaintiff had received FMLA certification to transport his mother to and from doctor's appointments for her chronic hip and back pain. See 675 F.3d at 1114. On the days at issue, the plaintiff was absent from work in order to provide emotional support to his mother and to help her manage her diabetes. See id. His mother did not have doctor's appointments on those days. Id. Although the plaintiff spoke to his manager on the days he was absent, he did not mention that he was missing work to care for his mother. Id. When he returned to work, he told his employer that his absences should be covered under the FMLA. Id. He was told to provide documentation from a doctor to support the request. Id. He failed to do so and was penalized for his absence under company policy. See id.
The United States Court of Appeals for the Eighth Circuit found that the plaintiff failed to give the defendant timely and adequate notice of his need for FMLA leave. See id. at 1116. The court reasoned that "[b]ecause [the plaintiff's] mother did not have a doctor's appointment on [the dates the plaintiff was absent], the previous certification did not cover [his] absence." Id. The court also noted that the defendant was not aware that the plaintiff's mother suffered from diabetes, let alone that she needed the plaintiff to help her manage her condition. Id. Because of these factors, and because the plaintiff failed to properly document his absence when given the opportunity to do so, the court found that the plaintiff failed to give adequate and timely notice under the FMLA. Id.
Chappell is immediately distinguishable from the instant case because Plaintiff, unlike the plaintiff in Chappell , alleges that she was absent due to the condition for which she obtained FMLA certification. The Court disagrees with Defendant that Chappell should be extended to cover situations where the duration of an employee's absence, rather than the reason therefore, conflicts with the certification. FMLA regulations prescribe the redress available to employers in such situations and offer an example that is substantially similar to the facts of this case:
(a) 30-day rule. An employer may request recertification no more than every 30 days and only in connection with an absence by the employee, unless paragraphs (b) or (c) of this section apply.
....
(c) Less than 30 days. An employer may request recertification in less than 30 days if:
....
(2) Circumstances described by the previous certification have changed significantly (e.g., the duration or frequency of the absence, the nature or severity of the illness, complications). For example, if a medical certification stated that an employee would need leave for one to two days when the employee suffered a migraine headache and the employee's absences for his or her last two migraines lasted four days each, then the increased duration of absence might constitute a significant change in circumstances allowing the employer to request a recertification in less than 30 days.
*868 29 C.F.R. § 825.308(a), (c). The regulations thus contemplate that, when an employee seeks FMLA leave at a frequency, or for a duration, that is inconsistent with his or her certification, the employer may seek recertification. The employer may not simply treat the notice as inadequate and disregard the request.[16]
Finally, Defendant argues Plaintiff provided inadequate notice because "an employee bears responsibility for clarifying the situation with his employer where he believes he requested intermittent FMLA leave but is terminated for failure to show up for work under company policy." [ECF No. 35-2 at 14]. In support of this view, Defendant relies on Ballato v. Comcast Corp. , 676 F.3d 768 (8th Cir. 2012). There, the plaintiff had been certified for intermittent FMLA leave in connection with chronic fatigue, depression, and weakness. See id. at 770. In June 2009, he sent inflammatory emails to several coworkers, causing concern for his safety. See id. at 770-71. It was suggested that he be put on "admin pay." Id. at 770. On June 5, 2009, the defendant deactivated the plaintiff's access to its building and computer systems, but he was not fired. See id. at 771. Human resources personnel left messages with the plaintiff, but he failed to return their calls. Id. Later that day, the plaintiff called the defendant's Resource Center thirty minutes prior to the start of his shift to request FMLA leave. Id. Because he was not in the defendant's computer system, the plaintiff was told to contact his supervisor. Id. The plaintiff never did. Id. The plaintiff went to the building where he worked, but could not enter the building. Id. He did not seek assistance in entering the building or otherwise inquire as to his inability to access his workplace. See id. Believing he had been fired, he failed to show up for work for his subsequent two shifts. See id. Having failed to show up for three consecutive shifts, the plaintiff was deemed to have resigned per the defendant's policy that treats three consecutive unexcused absences as a voluntary resignation. See id.
The plaintiff alleged that the defendant interfered with his rights under the Act by "failing to record his request for FMLA leave on June 5, and he was subsequently terminated, in part, for not calling in or showing up for his shift that day." Id. at 772. The Eighth Circuit held that "even assuming [the defendant's] conduct was interference, [the plaintiff] was not fired on June 5 and he still had the responsibility to clarify the situation, request FMLA leave, or show up for his subsequent shifts." Id. at 773. The court observed that the plaintiff was assured the previous day that he was still employed by the defendant, and he ignored calls from human resources. Id. He made no attempt to clarify the situation, nor did he receive any notice that he had been terminated prior to his next shift. Id. The court also noted that he did not contact the defendant to *869 try and clarify the situation after receiving his termination letter. Id.
Defendant argues Plaintiff did not state in her July 18-21 voicemails to Kooyman that her absences qualified as FMLA leave, nor did she make such a claim during her call with Kooyman at 9:30 a.m. on July 21, or on her call with Pedersen and Holder later that afternoon. [ECF No. 35-2 at 15]. Defendant also asserts Plaintiff gave no reason in her subsequent conversations with her union representative for her failure to turn in a doctor's note. Id. Some of these facts are disputed. Plaintiff asserts she told Kooyman in the July 18-21 voicemails that she was suffering from migraines, the condition for which she was approved for intermittent FMLA leave. See [ECF No. 34-1 ¶¶ 15, 17]. Plaintiff also disagrees that the record shows she failed to raise her FMLA leave during her July 21 discussion with Pedersen and Holder. See [ECF No. 37-2 ¶ 50].
The Court finds the instant case distinguishable from Ballato because Defendant actually terminated Plaintiff on July 21. The Ballato court found that the defendant was not liable for FMLA interference because the plaintiff "was not fired [on the day he sought FMLA leave] and he still had the responsibility to clarify the situation, request FMLA leave, or show up for his subsequent shifts." Ballato , 676 F.3d at 772 (emphasis added). Unlike in the matter before the Court, the plaintiff in Ballato had numerous opportunities to clarify his employment situation before adverse employment action was taken against him. Further, the plaintiff could have avoided those actions altogether by showing up for his subsequent shifts. In contrast, adverse employment action had already been triggered under Defendant's leave of absence policy by the start of Plaintiff's shift on July 21. It is true that the Eighth Circuit observed that the plaintiff in Ballato failed "to contest the [termination] decision or otherwise inquire why he had been unable to request his FMLA leave" after receiving a termination letter, but this observation cannot be separated from the broader circumstances of that case. See id. at 773. To the extent Plaintiff informed Kooyman that she was suffering from migraines in her voicemails of July 18-21, her failure to repeatedly raise the issue does not make her notice deficient for FMLA purposes.
C. Entitlement to Benefits
Defendant argues that Plaintiff cannot establish the third element of her prima facie case-whether Defendant denied her benefits to which she was entitled under the FMLA. Hasenwinkel , 809 F.3d at 432. Specifically, Defendant disputes Plaintiff's entitlement to FMLA leave on the grounds that: (1) she failed to resolve confusion as to whether her leave on July 18-21 was FMLA leave; (2) her absence was not supported by her FMLA certification; and (3) she was terminated for reasons unrelated to her FMLA leave. See [ECF No. 35-2 at 16-17]. The Court has already rejected Defendant's first and second arguments. As set out in the next section of this Order, Defendant may not rely on its third argument to the extent Plaintiff cited her migraines in her voicemails to Kooyman on July 18-21.
D. Unrelated Reason for Termination
Defendant argues that, even if Plaintiff has made out a prima facie case of FMLA interference, Defendant terminated her "because her failure to provide a doctor's note prior to the start of her shift on the fourth day of her absence violated Rockwell Collins' established procedures regarding medical absences and attendance." [ECF No. 35-2 at 19]. Defendant adds that its "policy on this point was clear and reinforced in Article XX of the CBA, the Medical Absences-Roles & Responsibilities policy, and the Coralville Operations *870 Attendance Policy." Id. Defendant thus argues that Plaintiff was terminated for reasons unrelated to her FMLA leave.
The Eighth Circuit has held that "every discharge of an employee while she is taking FMLA leave interferes with an employee's FMLA rights," but "an employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights." Bacon v. Hennepin Cty. Med. Ctr. , 550 F.3d 711, 715 (8th Cir. 2008) (citations omitted). Defendant argues that Bacon is squarely applicable to this case. There, the plaintiff sought FMLA leave due to a serious health condition believed to have been caused by environmental exposure at her workplace. Id. at 713. The defendant required employees on indefinite FMLA leave to call in daily to report their absences. See id. Defendant's policies also allowed for termination of any employee who failed to call in an absence on three consecutive days. See id. The plaintiff eventually stopped calling in to report her absences and was terminated per the defendant's call-in policy. See id. at 713-14.
The Eighth Circuit held that "[b]ecause [the plaintiff] was terminated for failing to comply with [the defendant's] call-in policy, and she would have been terminated for doing so irrespective of whether these absences were related to FMLA leave, the district court correctly held she did not state an interference claim under the FMLA." Id. In so concluding, the Eighth Circuit found that the employer's call-in policy was permissible under the FMLA and, thus, "[e]mployers who enforce such policies by firing employees on FMLA leave for noncompliance do not violate the FMLA." Id. at 715. The Court also found that the plaintiff had received adequate notice of the call-in policy, and that there was no plausible factual dispute as to whether the plaintiff was instructed by her supervisor that she was not required to call in and report her absences on a daily basis. Id. at 716.
The Court agrees with Defendant that the overarching principle in Bacon is applicable-Defendant is not liable under the Act if it can show it would have terminated Plaintiff's employment for reasons unrelated to her FMLA leave. But one of the Eighth Circuit's key findings in reaching its decision in Bacon is distinguishable from the instant case. The Eighth Circuit's holding was premised, in part, on the fact that the call-in policy at issue was permissible under FMLA regulations allowing an employer to "require an employee on FMLA leave to report periodically on the employee's status and intent to return to work." Id. at 715 (quoting 29 C.F.R. § 825.309(a)(2008) ).[17] Other courts have premised similar decisions on the permissibility of the policies giving rise to an employee's termination. See, e.g. , Callison , 430 F.3d at 121 (finding that there was no interference with FMLA rights where the employee was required to follow an employer's call-in policy, in part because the policy did not conflict with substantive provisions of the FMLA).
In contrast, and as already discussed, Defendant's leave of absence policy conflicts with the FMLA's recertification regulations to the extent Plaintiff notified Kooyman in her voicemails that her absences were due to migraines. Thus, like the notice issue, the issue of Defendant's unrelated reason for terminating Plaintiff turns on the content of Plaintiff's July 18-21 voicemails. If Plaintiff attributed her absences to migraines, Defendant's leave of absence policy impermissibly required *871 Plaintiff to provide a doctor's note sooner than the fifteen day-period prescribed by the FMLA regulations. In that case, Defendant cannot rely on the policy as an unrelated basis for Plaintiff's termination. If, however, Plaintiff did not cite her migraines in the voicemails, the undisputed evidence in the record shows Defendant terminated Plaintiff on the basis of its leave of absence policy, not Plaintiff's exercise of her rights under the FMLA. Notably in this regard, the record shows-and the parties do not dispute-that when the relevant individuals decided to terminate Plaintiff's employment with the Company, they were unaware that she had been approved for intermittent FMLA leave. See [ECF No. 38-1 ¶¶ 28-51].
A factual dispute remains as to the content of Plaintiff's July 18-21 voicemails. Defendant asserts no other grounds on which it terminated Plaintiff.[18] Thus, summary judgment on this issue-for either party-is inappropriate.
IV. CONCLUSION
For the foregoing reasons, the parties' cross-motions for summary judgment, [ECF Nos. 33; 35] are DENIED.
IT IS SO ORDERED.

The facts are derived from the parties' joint appendix of materials submitted in support of their motions, along with their respective statements of material facts.

To this and numerous other facts asserted by Defendant in its statements of material facts, [ECF Nos. 35-1; 38-2], Plaintiff responded by stating "Plaintiff disputes the contention there is a material fact to admit or deny. This fact has no relevance to [Plaintiff's] entitlement to FMLA benefits, Rockwell's denial of those benefits, or a lawful reason for termination while attempting to utilize FMLA leave." See, e.g. , [ECF No. 37-2 ¶ 1]. Federal Rule of Civil Procedure 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by" either citing to materials in the record, showing that the materials cited by an adverse party do not "establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." A party may also "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). This provision, however, is concerned with the admissibility of evidence that purportedly supports a fact, not the fact itself. Thus, Rule 56(c) focuses on whether particular facts are disputed; it does not allow a party to challenge a fact on the grounds of its relevance, except where the underlying evidence is inadmissible under Federal Rule of Evidence 402. The Court does not find Plaintiff's general reference to a fact's relevance to be a challenge to the admissibility of the underlying evidence. "If a party ... fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2). The Court finds that, where Plaintiff provided only the answer excerpted above to Defendant's asserted facts, Plaintiff failed to properly address those facts under Rule 56(c). As a consequence, the Court will treat those facts as undisputed for the purposes of the parties' motions for summary judgment.

Defendant points out that Plaintiff did not submit her FMLA Absence Form for her July 5 absence until July 11. [ECF No. 35-1 ¶¶ 27-28]. The Court notes that the FMLA Absence Form asks employees to return the completed form within two business days of his or her return to work. [ECF No. 36 at 32]. After her FMLA-related absence on July 5, Plaintiff was absent from work on vacation and non-FMLA-related sick leave until July 11. See [ECF No. 35-1 ¶ 35]. Thus, Plaintiff's submission of her July 5 FMLA Absence Form was timely, according to the form.

Plaintiff also notes that Kooyman testified during her deposition that Defendant still had the voicemail recordings. [ECF No. 36 at 115]. In a subsequent affidavit, Kooyman stated that she deletes the voicemails as she receives them, because otherwise the voicemail box becomes full and cannot accept additional messages. Id. at 146-47. Defendant does not explain this discrepancy. See [ECF No. 35-2 at 7].

Specifically, the provision excerpted supra , which states, "[a]bsences beyond 3 consecutive working days without an approved leave of absence are considered a voluntary quit (AWOL)." [ECF No. 36 at 41].

The parties agree that Plaintiff's need for FMLA leave on July 18-21, 2016, was unforeseen. See [ECF No. 38-1 ¶ 18] (admitting that Plaintiff "believed she would be able to return to work the following day after each of [her] absences" on July 18-21).

Plaintiff's June 29, 2016 FMLA Designation Notice instructed her that she "must designate [her] leave as FMLA ... any time [she] call[s] in, otherwise [the] absences may count against the absence/attendance policy." [ECF No. 36 at 27]. This is more restrictive than the FMLA regulations, which allow her to reference either the FMLA or her qualifying reason when giving notice. See 29 C.F.R. § 825.303(b). "[W]here an employer's internal policies conflict with the provisions of the FMLA, the FMLA controls and an employee need only comply with the requirements of the Act to invoke its protections." Callison v. City of Phila. , 430 F.3d 117, 121 (3d Cir. 2005). Thus, the Court finds Plaintiff satisfied the designation requirement in her Designation Notice if she said in her voicemails to Kooyman either that her absences were FMLA-related, or she attributed them to her migraines.

As discussed infra , FMLA regulations give employers procedural recourse if they have reason to question whether the leave request is related to a previously approved qualifying reason.

Defendant also cites Hager v. Arkansas Department of Health , 735 F.3d 1009, 1015-16 (8th Cir. 2013), for the proposition that notice must include the anticipated date of return. However, on this point, Hager cites Scobey , which, as noted above, cites Woods . See id.

For example, if a certification states that an employee will be unable to work for forty days, then an employer cannot seek recertification before the expiration of that forty-day period. See 29 C.F.R. § 825.303(b).

Defendant argues that Marrero is inapposite because that case involved an initial request for leave and, here, Defendant allowed Plaintiff the required timeframe for submitting her initial FMLA certification. See [ECF No. 38 at 16-17]. However, the Marrero court's reasoning applies equally to requests for recertification, for which employers must also allow employees fifteen days to comply. See 29 C.F.R. § 825.308(d). Defendant also argues that Marrero is inapposite because it was decided before the 2009 amendments to the FMLA regulations, which added the requirement in 29 C.F.R. § 825.303(c) that employees must comply with the employer's "usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." However, section 825.303(c) does not allow employers to implement policies that conflict with the FMLA. "[W]hile Section 825.303(c) generally requires compliance with an employer's usual and customary policies, it does not authorize an employer to require its employees to comply with policies that are inconsistent with the rights granted to employees in that section." Boadi v. Ctr. for Human Dev., Inc. , 239 F.Supp.3d 333, 345 (D. Mass. 2017) (alteration in original) (quoting Ortega v. San Juan Coal Co. , Civ. No. 12-CV-0501 MV/RHS, 2013 WL 12116377, at *22 (D.N.M. Oct. 3, 2013) ).

Defendant does not specify its purpose in obtaining this information.

Given that the length of Plaintiff's July 18-21 absences exceeded the estimates listed in her FMLA certification (i.e. , flare-ups of up to two days in duration), the Court finds Defendant was entitled to request recertification after Plaintiff's third consecutive absence. See [ECF No. 36 at 25]; 29 C.F.R. § 825.308(c)(2).

As a practical matter, Plaintiff would only have needed to reference her migraines in one of her voicemails. As long as she did, there could not have been four consecutive days on which she was absent without giving proper notice.

As an alternative argument, Plaintiff argues that the doctor's note element of Defendant's leave of absence policy is not a notice or procedural requirement for requesting leave under 29 C.F.R. § 825.303(c). See [ECF No. 34 at 12-13]. Although it may not be a notice requirement, given that employees must nevertheless notify their managers when they will be absent, it is a procedural requirement for requesting a leave of absence.

Defendant cites only one case where a court found that an employer properly denied an FMLA leave request because it exceeded the amount of leave indicated in a physician's certification. See Woida v. Genesys Reg'l Med. Ctr. , 4 F.Supp.3d 880, 894-95 (E.D. Mich. 2014). However, in reaching that conclusion, the Woida court relied on "negative certification cases." See id. at 895. In such cases, courts have held that an employer does not violate the FMLA when it denies leave on the basis of a physician's certification that states the employee is still capable of performing his or her job functions. See, e.g. , Stoops v. One Call Commc'ns, Inc. , 141 F.3d 309, 313-14 (7th Cir. 1998). The Court has found no Eighth Circuit authority that applies the "negative certification" cases in this manner, and the Court finds that doing so would be inconsistent with the FMLA's recertification regulations. The Court disagrees with the reasoning in Woida and declines to follow it.

Since Bacon was decided, this provision has been recodified at 29 C.F.R. § 825.311(a).

As noted above, Defendant appears to assert its own policies, rather than the CBA itself, as the basis for Plaintiff's termination. This seems appropriate, given that Article XX of the CBA is silent on various procedural elements, such as how to obtain a leave of absence. See [ECF No. 36 at 5]. If, however, Article XX can be viewed as incorporating Defendant's policies, or independently requiring a doctor's note for a leave of absence, the Court finds that the CBA also conflicts with the FMLA to the extent Plaintiff gave sufficient notice of her need for FMLA leave. See 29 U.S.C. § 2652(b) ("The rights established for employees under this Act ... shall not be diminished by any collective bargaining agreement or any employment benefit program or plan.").